IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAR 1 4 2011 ★

LONG ISLAND OFFICE

--------------------------------------------------X

**ALEX DAYTON,**

      Petitioner,

  vs.

**THOMAS LAVALLEY,** Superintendent of
Clinton Correctional Facility,

      Respondent.

--------------------------------------------------X

Docket No._____

# CV 11 1261

## FEUERSTEIN, S

**AFFIRMATION & MEMORANDUM
OF LAW IN SUPPORT OF PETITION
FOR A WRIT OF *HABEAS CORPUS*
PURSUANT TO 28 U.S.C. §2254**

Respectfully Submitted,

*Alex Dayton* (signature)

Alex Dayton, Din# 07-A-0238
Petitioner, *"Pro-Se"*
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929

**DATE SUBMITTED:** March ___9___, 2011

# TABLE OF CONTENTS

Table of contents..................................................................................................................ii

Table of Cases.....................................................................................................................iii

Table of Authorities...........................................................................................................vii

Preliminary Statement...........................................................................................................1

Statement of Facts.................................................................................................................2

Argument...............................................................................................................................5

Conclusion...........................................................................................................................23

Ground one............................................................................................................................5

      PETITIONER WAS DENIED HIS DUE PROCESS RIGHT TO A "FAIR TRIAL" AS ENUMERATED UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNTIED STATES CONSTITUTION WHERE THE DISPARITY IN THE PETITIONER'S SENTENCE WAS UNEQUIVOCAL PUNISHMENT FOR EXECUTING HIS CONSTITUTIONAL RIGHT TO REFUSE TO PLEAD GUILTY AND GO TO TRIAL INSTEAD.

Ground two............................................................................................................................9

      PETITIONER WAS DENIED HIS DUE PROCESS RIGHT TO A "FAIR TRIAL" AS ENUMERATED UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNTIED STATES CONSTITUTION, WHERE THE TRIAL COURT ERRED IN ITS REASONABLE DOUBT INSTRUCTION.

Ground three........................................................................................................................13

      PETITIONER WAS DENIED HIS DUE PROCESS RIGHT TO A "FAIR TRIAL" AS ENUMERATED UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNTIED STATES CONSTITUTION, WHERE PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO CALL ANY EXPERT WITNESSES ON PETITIONER'S BEHALF, INTER ALIA.

## TABLE OF CASES

**FEDERAL CASES**                                                                 **Pages**

*Berkemer v. McCarty,*
    468 U.S. 420, 442 (1984).................................................................22

*Cage v. Louisiana,*
    498 U.S. 39, 40, 111 S.Ct. 328, 112 Led 2d 339 (1990)..................10

*Corbitt v. New Jersey,*
    439 U.S. 212, 219, 99 S. Ct. 492, 498, (U.S.N.J. 1978).................5, 8

*Duncan v. Louisiana,*
    391 U.S. 145, 149 88 S.Ct. 1444, 20 Led 2d 491 (1968)..................9

*Eze v. Senkowski,*
    321 F.3d 110, 112 (2nd Cir 2003)................................................14

*Hansen v. United States,*
    156 U.S. 51, 105-06, 15 S.Ct. 273, 39 Led 343 (1895)...................9

*Harmelin v. Michigan,*
    501 U.S. 957 (1991)..................................................................5

*Illinois v. Perkins,*
    496 U.S. 292, (1990)...............................................................22

*Jackson v. Virginia,*
    99 S.C.t. at 2787 (1979)............................................................9

*Lindstadt v. Keane,*
    239 F.3d 191, 202 (2nd Cir 2001)..........................................13, 14

*McMann v. Richardson,*
    397 U.S. 759, 771 n.14 (1970)...................................................13

*Miranda v. Arizona,*
    384 U.S. 436 (1966)................................................................21

*Oregon v. Mathiason,*
    429 U.S. 492 (1977)................................................................22

*Osborn v. Shillinger,*
    861 F.2d at 627 United States Court of Appeals (10th Cir. 1988)......15

*Stansbury v. California,*
    511 U.S. 318, 323 (1984).........................................................22

*Strickland v. Washington,*
    466 U.S. 668, 686 (1984)....................................................13, 14

*Sullivan v. Louisiana,*
    508 U.S. 275, 113 S.C.t. 2078, 124 Led 2d 182, 188 (1993).............9

*Thomas v. Keohane,*
    516 U.S. 99 at 465 (1995)........................................................22

*United States v. Adkins,*
    937 F2d 947, 950 (4th Cir. 1991)...............................................10

*United States v. Cruz,*
    977 F.2d 732 (2nd Cir. 1992)..............................................5, 7, 8

*United States v. Eyman,*
    313 F.3d 741, 743 (2nd Cir 2002)..............................................13

*United States v. Halls,*
    854 F2d 1036, 1039 (7th Cir. 1988)............................................10

## TABLE OF CASES

**FEDERAL CASES**                                                    <u>**Pages**</u>

*United States v. Micieli,*
   594 F.2d 102 (5th Cir. 1979)...................................................................22

*United States v. Pine,*
   609 F2d 106, 107 (3dCir. 1979)..............................................................9

*Victor v. Nebraska,*
   511 U.S. 1, 114 S.C.t. 1239, 127 Led 2d 583, 590 (1994)....................10, 11

*Wiggins v. Smith,*
   123 S.Ct. 2527, 2635, 2542 (2003)..........................................................13

*Winship,*
   397 U.S. 358, 364, 90 S.C.t. 1068, 25 Led 2d 368, 375 (1970)..............9, 10

## TABLE OF CASES

**STATE CASES**                                                                                    <u>Pages</u>

*People v. Almonor,*
    93 N.Y. 2d 571 (1999)...........................................................................................16

*People v. Antomarchi,*
    80 N.Y. 2d 247, 590 N.Y.S. 2d 33 (1990)...........................................................18

*People v. Baker,*
    19 N.Y.2d 982 (1967).............................................................................................7

*People v. Baldi,*
    54 N.Y.2d.137, 147;.......................................................................................14, 15

*People v. Beasley,*
    80 N.Y. 2d 981, 592 N.Y.S. 2d 644 (1992).........................................................18

*People v. Benn,*
    68 N.Y. 2d 941...................................................................................................15

*People v. Berk,*
    88 N.Y. 2d 257, 265-266 (1996)..........................................................................16

*People v. Bleakley,*
    69 N.Y. 2d 493, 515 N.Y.S. 2d 761 (Ct. App. 1987)..........................................12

*People v. Brathwaite,*
    63 N.Y. 2d 839, 843 (1984)....................................................................................7

*People v. Christman,*
    23 N.Y. 2d 429, 434 (1968)....................................................................................7

*People v. Communiello,*
    180 AD 2d 809 (2nd Dept. 1992)...........................................................................17

*People v. Cunningham,*
    49 N.Y. 2d 203 (1980)..........................................................................................21

*People v. Daddona,*
    81 N.Y. 2d 990, 599 N.Y.S. 2d 530 (1993).........................................................19

*People v. Gebrosky,*
    80 N.Y. 2d 995, 592 N.Y.S. 2d 650 (1992).........................................................18

*People v. Gerard,*
    50 N.Y. 2d 329, 397-398, 429 N.Y.S. 2d 406......................................................19

*People v. Gomez,*
    137 A.D. 2d 556, 524 N.Y.S. 2d 460 (1988, 2nd Dept.).......................................18

*People v. Gracius,*
    6 AD 3d 222 (2004)..............................................................................................16

*People v. Grant,*
    45 N.Y. 2d 366 (1978)..........................................................................................21

*State v. Hudson,*
    286 N.J. Super 149, 153,......................................................................................11

*People v. Lakatosz,*
    59 AD 3d 813, 877 N.Y.S. 2d 475 (3rd Dept. 2009).........................................5, 8

*People ex rel. Maurer v. Jackson,*
    2 N.Y.2d 259, 264 (1957)......................................................................................6

*People v. McCaleb,*
    25 N.Y. 2d 394.....................................................................................................12

## TABLE OF CASES

**STATE CASES**                                                          **Pages**

*People v. Paulin,*
    25 N.Y. 2d 445, 306 N.Y.S. 2d 929 (1969)..............................................................22

*People v. Pinkas,*
    156 A.D. 2d 485 (2d Dept. 1989).........................................................................18

*People v. Prochilo,*
    41 N.Y. 2d 759 (1977).......................................................................................21

*People v. Redmond,*
    225 N.Y. 206,  121 N.E. 785...............................................................................12

*People v. Riback,*
    870 N.Y.S. 2d 517 (3rd Dept. 2008).................................................................5, 8

*People v. Skinner,*
    52 N.Y. 2d 24 (1980)........................................................................................21

*People v. McCaleb,*
    25 N.Y.2d 394..................................................................................................12

*People v. Stultz,*
    2 N.Y.3d 277, 284, 778 N.Y.S.2d 431, 810 N.E.2d 833 (2004)........................14

*People v. Tanner,*
    30 N.Y. 2d 102, 108 (1972)................................................................................7

*People v. Torres,*
    80 N.Y. 2d 944, 590 N.Y.S. 2d 867 (1992)........................................................18

*People v. Truesdell,*
    70 N.Y. 2d 809, 810-11 (1987)...........................................................................7

*State v. Vaszorich,*
    13, N.J. 115 (1953)...........................................................................................11

*People v. Williams,*
    190 A.D. 2d 590, 593 N.Y.S. 2d 789 (1993, 1st Dept.)..................................18,19

*People v. Yukl,*
    25 N.Y. 2d 585, 307 N.Y.S. 2d 857 (1969).......................................................22

# TABLE OF AUTHORITIES

**FEDERAL STATUTES**                                                                    **Pages**
28 U.S.C. § 2254 (d).............................................................................................................1


**UNITED STATES CONSTITUTION AMENDMENTS**
Sixth and Fourteenth Amendments.......................................................... ii, 5, 9, 13, 14, 21, 23
Eighth Amendment......................................................................................................ii, 5
Fifth Amendment.............................................................................................................21
U.S.C.A. Constitutional Amendment 8,.........................................................................8
New York State Constitution, Article I, Sec. 6,...........................................................15


**STATE STATUTES**
Penal Law §130.50.03,...............................................................................................2, 17
Penal Law § 137.67-1C,..............................................................................................2, 17
Penal Law §130.65-03,................................................................................................2, 17
Penal Law §260.10,......................................................................................................2, 17
Penal Law § 155.25,.....................................................................................................2, 17
Penal Law § 70.25 (2),..................................................................................................6, 7
Penal Law § and Criminal Code 22,.................................................................................6


Criminal Procedure Law § 290.10 (1) (a),...............................................................11, 12
Criminal Procedure Law § 250.10(2),......................................................................15, 16
Criminal Procedure Law § 250.10 (3),...........................................................................16
Criminal Procedure Law § 202.20,.................................................................................17
Criminal Procedure Law § 40. 10(2),.............................................................................17
Criminal Procedure Law § 470. 15(6),......................................................................12, 18
Criminal Procedure Law § 60.41 (1),.............................................................................20
Criminal Procedure Law § 60.45 (2)(a)(b),....................................................................21


Civil Practice Law and Rules, § 5501 (c),......................................................................12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

**ALEX DAYTON,**
          Petitioner,

          vs.

**THOMAS LAVALLEY,** Superintendent of                    Docket No._____
Clinton Correctional Facility,

          Respondent,

-------------------------------------------------------X

## INTRODUCTION

### PRELIMINARY STATEMENT

        Petitioner argues that this petition for a Writ of Habeas Corpus should be issued on the following

grounds presented in this Memorandum of Law. Petitioner also understands that pursuant to 28 U.S.C.

§2254(d):

        "An application for a Writ of Habeas Corpus on behalf of a person in custody pursuant to the

judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits

in State Court proceedings unless the adjudication of the claim:

        (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal Law, as determined by the Supreme Court of the United States; or

        (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State Court proceeding."

        Petitioner will show that his arguments fall within these statutory requirements and should be granted

the relief he seeks.

Page -1-

## STATEMENT OF FACTS

1. Petitioner was originally charged with: One: (2) Counts Criminal Sexual Act in the First degree Penal Law §130.50.03, Two: (1) Count of Aggravated Sexual Abuse in the Second Degree, Penal Law § 137.67-1C, Three: (1) Count of Sexual Abuse in the First Degree, Penal Law §130.65-03, Four : (1) Count of Endangering the Welfare of a Child Penal Law §260.10, and Five: (1) Count of Petit Larceny, Penal Law § 155.25.

2. Petitioner was arraigned between October 4-9, 2005. At the arraignment Petitioner entered a plea of "not guilty" and was denied bail.

3. Prior to indictment petitioner refused a Plea Bargain offer from the People of {Fives Years}. Immediately prior to Trial petitioner refused a second Plea Bargain from the People of {Thirteen Years}.

4. On December 19th, 2005, a Suffolk County Grand Jury indicted the petitioner as followed : Counts 1 and 2, Criminal Sexual Act in the First Degree; Count 3, Aggravated Sexual Abuse in the Second Degree; Count 4, Sexual Abuse in the First Degree; Count 5, Sexual Abuse in the First Degree; Counts 6 and 7, Endangering the Welfare of a Child, and Count 8, Petit Larceny. All Counts, with the exception of Counts 5, 7, and 8, related to the same victim and, with exception to Counts 5, and 7, occurred approximately the same time span. Counts 5, 7, and 8, must be severed and tried separately since they involved separate victims and the potential for prejudice.

5. Before Trial and by agreement a Huntley Hearing was held to determine whether defendant's statements were knowingly and voluntarily made.

6. After hearings and a Jury Trial, the petitioner was convicted of all the charges in Indictment 2921-05 and on January 3rd 2007, petitioner was sentenced to serve several terms of imprisonment that total"50 years".

7. In February 2007, a timely Appeal was filed.

8. On February 28, 2007, this Court granted petitioner poor person status and assigned Robert C. Mitchell Esq. as Counsel on Appeal. By order of this Court dated June 11, 2007, Robert C. Mitchell Esq. was

relieved and Salvatore C. Adamo was assigned as Counsel on Appeal.

9. On November 14, 2008, The Appellate Division Second Department Received petitioner's November 11, 2008, Brief for Defendant-Appellant #2007-00465.

10. On March 27th, 2009, the Appellate Division Second Department received the Brief of the Respondent, #2007-0465,Suffolk Co. Ind. No. 2921-05.

11. On October 13th, 2009, The Appellate Division Second Department Affirmed the petitioner's Direct Appeal. A timely application seeking permission to appeal to the N.Y.S. Court of Appeals was filed.

12. On December 15th, 2009, the State of New York Court of Appeals denied petitioner's timely application to Appeal the Appellate Division Second Department's October 13th, 2009, denial of petitioner's Direct Appeal.

**The alleged incident of Sexual Conduct**

Counts one through four and six charged petitioner with crimes based on his alleged sexual conduct with A.R. [1], a boy who was approximately 3 years old when the alleged crimes occurred. Counts Five and Seven charged petitioner with crimes based on his alleged sexual conduct with M.H., a boy who was approximately 16 months old when the alleged crimes occurred. Count Eight charged the petitioner with the Theft of pictures of A.R. from A.R.'s parents.

The child, A.R. who was allegedly being abused was the son of the Thrift Store owner {Huntley Hearing page 17}. Petitioner was allegedly inappropriately touching A.R. by pulling down his training pants, putting lotion on his finger and putting it in A.R.'s anus, *Inter alia.*

The child, M.H. who was allegedly being abused was the son of J.M. c's. Petitioner was allegedly inappropriately touching M.H. by kissing him on his mouth full, *Inter alia.*

---

[1]A.R. is the initials of the child victim to protect his identity who was approximately 3 years old when the alleged crimes occurred.
M.H. is the initials of the child victim to protect his identity who was approximately 16 months old when the alleged crimes occurred.

Petitioner's Writ of Habeas Corpus will properly demonstrate to this Honorable Court how the petitioner's Eighth & Fourteenth Amendments to the United States Constitution was in fact violated where the Disparity in the petitioner's Sentence was unequivocal punishment for executing his Constitutional Right to refuse to plead guilty and go to trial instead. Petitioner's Writ of Habeas Corpus will also demonstrate how Petitioner was denied his Due Process Right to a "Fair Trial" as enumerated under the Sixth and Fourteenth Amendments to the United States Constitution, where the Trial Court Erred in it's Reasonable Doubt Instructions. Petitioner's Writ of Habeas Corpus will also demonstrate how Petitioner was denied his Due Process Right to a "Fair Trial" as enumerated under the Sixth and Fourteenth Amendments to the United States Constitution, where petitioner received Ineffective Assistance of Counsel where Trial Counsel failed to call any Expert witnesses on petitioner's behalf, Inter alia. Petitioner's Writ of Habeas Corpus will demonstrate why the petitioner should receive a new Trial or in the alternate receive an significant Sentence Reduction at the very least.

## ARGUMENT

**GROUND I:**

      **PETITIONER WAS DENIED HIS DUE PROCESS RIGHT TO A "FAIR TRIAL" AS ENUMERATED UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNTIED STATES CONSTITUTION WHERE THE DISPARITY IN THE PETITIONER'S SENTENCE WAS UNEQUIVOCAL PUNISHMENT FOR EXECUTING HIS CONSTITUTIONAL RIGHT TO REFUSE TO PLEAD GUILTY AND GO TO TRIAL INSTEAD.**

**A. Excessive Sentencing Disparities:**

      The United States Courts of Appeals for the Second Circuit in *United States v. Cruz,* 977 F.2d 732 (2nd Cir. 1992) stated : Courts have long recognized that Trial Judges are entitled to encourage guilty pleas by imposing on a defendant who pleads guilty a lesser sentence than would have been imposed had the defendant stood trial. In *United States v. Cruz,* 977 F.2d 732 (2nd Cir. 1992) it was held that pretrial threat of District Judge to impose maximum sentence in event the Judge concluded that defendant went to trial with out a good defense was inappropriate and warranted remand for re-sentencing Judges remarks created an unacceptable risk that sentence was impermissibly enhanced above an otherwise appropriate sentencing norm to penalize defendant for exercising his Constitutional Right to stand Trial. See Also *Corbitt v. New Jersey,* 439 U.S. 212, 219, 99 S. Ct. 492, 498, (U.S.N.J. 1978), & *Harmelin v. Michigan,* 501 U.S. 957 (1991). However, conversely, it is not proper for a Court to punish a petitioner for exercising his Constitutional Right to proceed to trial and not accept a plea bargain offer given by the People.

      In *People v. Lakatosz,* 59 AD 3d 813, 877 N.Y.S. 2d 475 (3rd Dept. 2009) the Court held: The Imposition of 30-Year prison term for conviction of multiple counts of burglary and petit larceny was "Harsh and Excessive," especially in the light of Pre-Trial Plea Agreement offer involving six-year prison sentence if defendant pled guilty to Burglary and bail jumping; scenario as to how crimes were committed did not change between time plea was offered and time trial was conducted, and nothing was developed at trial that added to seriousness of defendant's misconduct.

      In *People v. Riback,* 870 N.Y.S. 2d 517 (3rd Dept. 2008) the considerable disparity between the

sentence offered prior to trial [5 to 7 years with a plea to one felony] and that ultimately imposed after trial [48 years aggregate] strikes us as too extreme a penalty for defendant's exercise of his Constitutional Right to a jury trial. The *People* have long had a strong case supported by numerous credible witnesses and, thus, no problems in their proof justified this substantial disparity. The extent of harm caused by defendant's conduct against these victims was known at the time of the plea offer. The desire to save these patients and their families from the burden and stress of a trial – while certainly a conscientious purpose we fully appreciate – and cannot justify the "40-year disparity" from the original plea offer. Defendant who was 47 years old at the time of the sentencing, had no criminal record of any kind. While the *People* "may encourage a guilty plea by offering substantial benefits".

## B.    Counsel's Error.

In the case at Bar, the petitioner was sentenced to the maximum sentence of "50 years". Petitioner was sentenced so severely because he refused to accept a plea bargain prior to indictment of {Five Years} and refused a second plea bargain immediately prior to trial of {Thirteen years}. The Trial Court's sentence was based on retaliation which is contrary to the integrity of sentencing in this State. Petitioner was sentenced to consecutive periods of incarceration for the Criminal Sexual Acts in the First degree counts. Pursuant to P.L. § 70.25 (2), concurrent sentencing may be imposed on a person who commits two or more offenses through a single act or omission. This statutory formulation constitutes a restatement of the consecutive sentence restriction in Section 1938 of the former Penal Law, as interpreted by the Court of Appeals in *People ex rel. Maurer v. Jackson,* 2 N.Y.2d 259, 264 (1957); Fourth Interim Report of the State of New York Temporary Commission on Revision of the Penal Law and Criminal Code 22 (1965). Faced only with the question of whether concurrent sentences could be imposed for a single act or omission that violated more than one statute, the Court of Appeals held in *Jackson* that concurrent sentences were permissible in such circumstances, but noted that consecutive sentences would not be. *Id.* at 264-66.

Consecutive sentences have been approved only in two circumstances. The first situation is where

one crime occurs after the other offense is complete and appears as an unnecessary afterthought of the other, *People v. Tanner*, 30 N.Y. 2d 102, 108 (1972) {Murder committed after robbery was complete} see *People v. Baker*, 19 N.Y.2d 982 (1967) {unlawful entry of an apartment and Petit Larceny committed once inside}. Consecutive sentences may also be ordered where the defendant harms two different victims through two separate acts. *People v. Truesdell*, 70 N.Y. 2d 809, 810-11 (1987); *People v. Brathwaite*, 63 N.Y. 2d 839, 843 (1984). On the other hand, a Court may not sentence a defendant consecutively where his conduct violates two statutes, but is so unified with the basic acts made criminal by the Penal Law that it could not be made the basis for separate punishments, *People v. Christman*, 23 N.Y. 2d 429, 434 (1968).

Consequently, consecutive sentences are not justified where two crimes are committed in the course of the same criminal transaction and one crime is incidental to the other. Here, the Trial Court's decision to impose consecutive sentences was in error. Petitioner's alleged crimes were part of the overall scheme and it is respectfully submitted that the Criminal Sexual Acts counts should run concurrent to each other and that petitioner's sentence should be reduced. Trial Court and the States Court's decisions on this issue were and unreasonable application of *United States v. Cruz*, 977 F.2d 732 (2nd Cir. 1992) in regards to a sentence being impermissibly enhanced above an otherwise appropriate sentencing norm to penalize defendant for exercising his Constitutional Right to stand trial, for this reason petitioner's sentence should be reduced. Pursuant to P.L. § 70.25 (2), concurrent sentencing may be imposed on a person who commits two or more offenses through a single act or omission, for this reason petitioner's sentence should be reduced.

Lastly, it is obvious that the (50) year sentence given to the petitioner was Excessive, Cruel and Unusual Punishment for exercising his Constitutional Right to refuse a plea-deal and go to Trial instead. The "50-year sentence" cannot justify the "45-year disparity" from the original plea offer of {Five Years} and the "37 year disparity" from the second plea offer of {Thirteen years} just before trial. The crimes committed by the petitioner did not change between time plea was offered and time trial was conducted, and nothing was developed at trial that added to seriousness of Petitioner's misconduct. Trial Court and the

States Court's decisions on this issue were and unreasonable application of *United States v. Cruz,* 977 F.2d 732 (2nd Cir. 1992), *Corbitt v. New Jersey,* 439 U.S. 212, 219, 99 S. Ct. 492, 498, (U.S.N.J. 1978), *People v. Lakatosz,* 59 AD 3d 813, 877 N.Y.S. 2d 475 (3rd Dept. 2009), U.S.C.A. Constitutional Amendment 8, & *People v. Riback,* 870 N.Y.S. 2d 517 (3rd Dept. 2008) decision in regards to it not being proper for a Court to punish a petitioner with outrageous disparities in years from the original plea offer for exercising his Constitutional Right to proceed to trial and not accept a plea bargain offer. Petitioner should be granted a new Trial or in the alternate petitioner's Sentence should be reduced extensively. For these reasons petitioner's application for this Writ of Habeas Corpus should be Granted.

**GROUND TWO:**

PETITIONER WAS DENIED HIS DUE PROCESS RIGHT TO A "FAIR TRIAL" AS ENUMERATED UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNTIED STATES CONSTITUTION, WHERE THE TRIAL COURT ERRED IN ITS REASONABLE DOUBT INSTRUCTION.

**C. Insufficiency of the Evidence & Instructing Jury about Reasonable Doubt:**

**THE JACKSON v. VIRGINIA STANDARD:**

In *Jackson v. Virginia,* 99 S.C.t. at 2787 (1979) Justice Stevens held : The constitution standard recognized in the *Winship* case was expressly phrased as one that protects an accused against a conviction except on *"proof* beyond a reasonable doubt."

In *Winship,* the Court held for the first time that the Due Process Right Clause of the Fourteenth Amendment protects a defendant in a Criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. In a criminal prosecution, the State bears the burden of proving beyond a reasonable doubt every element of an offense.

In *Re-Winship,* 397 U.S. 358, 364, 90 S.C.t. 1068, 25 Led 2d 368, 375 (1970), the Due Process Clauses of the Federal Constitution, *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.C.t. 2078, 124 Led 2d 182, 188 (1993), *Winship, Supra,* 397 U.S. at 364, *United States v. Pine,* 609 F2d 106, 107 (3dCir. 1979), and the New York Constitution compel this standard. Under the Sixth Amendment, the Jury, not the Court, determines guilt in a serious criminal case. See *Duncan v. Louisiana,* 391 U.S. 145, 149 88 S.C.t. 1444, 20 Led 2d 491 (1968); *Sparf and Hansen v. United States,* 156 U.S. 51, 105-06, 15 S.C.t. 273, 39 Led 343 (1895). Due process mandates that the Jury verdict required by the Sixth Amendment is a Jury verdict of guilty beyond a reasonable doubt. *Sullivan, Supra,* 124 Led 2d at 188. A Jury instruction that fails to communicate the *People's* burden to prove guilt beyond a reasonable doubt is not amenable to harmless error analysis and requires reversal. *Id.,* 124 Led 2d at 189-90. The reasonable doubt standard provides "concrete substance for the presumption of innocence," and reduces the risk of wrongful conviction. *Winship, supra,*

397 U.S. at 363, 25 Led 2d at 375. It assures that a defendant will not be convicted if reasonable doubt exists about his or her guilt. *Id.* at 363-64. Not withstanding its venerated role, the standard is problematic. The United States Supreme Court lamented, although this standard is an ancient and honored aspect of our criminal justice system, it defies easy explication. *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 Led 2d 583, 590 (1994). Neither the New York Constitution nor the Federal Constitution explicitly demands that the trial Court's define reasonable doubt. Both Constitutions require only that the trial inform the jury of the People's burden to prove the defendant's guilt beyond a reasonable doubt.

Neither Constitution defines reasonable doubt. Understandably, trial Court's have struggled in explaining the People's burden. Some Federal Circuit Court's of Appeal have instructed District Court's not to try to define the beyond-a-reasonable-doubt standard because the definitions are frequently either unhelpful or inaccurate. See e.g., *United States v. Adkins,* 937 F2d 947, 950 (4th Cir. 1991) ("This Circuit has repeatedly warned against giving the Jury definitions of Reasonable Doubt, because definitions tend to impermissibly lessen the burden of proof.... The only exception to our categorical disdain for definitions is when the jury specifically requests it") *United States v. Halls,* 854 F2d 1036, 1039 (7th Cir. 1988) (upholding District Court's refusal to provide definition, despite jury's request, because, "at best, definitions reasonable doubt are unhelpful to a jury.....An attempt to define reasonable doubt presents a risk without any real benefit.").

The United States Supreme Court has held that a jury instruction that partially defined reasonable doubt, as "such a doubt as would give rise to a grave uncertainty," and as "an actual substantial doubt," violated the Due Process Clause. *Cage v. Louisiana,* 498 U.S. 39, 40, 111 S.Ct. 328, 112 Led 2d 339 (1990). The Court explained that "the words 'substantial' and 'grave' as they are commonly understood suggest a higher degree of doubt is required for acquittal under the reasonable doubt standard.," Id. at 41. Although the Court disapproves of equating the reasonable doubt standard with "moral certainty," an instruction that makes the equation will not violate due process if the charge also emphasizes that the jurors must base their

conclusion on the evidence. *Victor, supra,* 127 Led 2d at 596-97. Because "the Constitution does not require that any particular forms of words be used in advising the jury of the Government's burden of proof," id. 127 Led 2d at 590. Reasonable doubt instructions must be considered in their entirety. Only those instructions that overall lessen the People's burden of proof violate Due Process.

**D.     Counsel's Errors.**

In the case at bar, petitioner asserts that the instruction improperly diminished the People's burden of proof. When explaining reasonable doubt to the jury, the trial Court stated, "a reasonable doubt is an honest doubt of the defendant's guilt  for which a reason exists based upon the nature and quality of the evidence." T.T.[2] 11-14-06, 876. This Statement erroneously implied that the jury must find an articulable reason to support its doubts about the People's case. See, *State v. Vaszorich,* 13, N.J. 115 (1953) (holding that the statement contained in a juror pamphlet that "a reasonable doubt is one for which, should he be called upon, a juror can give a reason," was "obviously erroneous under our law."). Jurors may harbor a valid reasonable doubt even if they cannot explain the reason for the doubt.

In *State v. Hudson,* 286 N.J. Super 149, 153, the New Jersey Appellate Division disapproved of a similar definition of reasonable doubt as a "doubt for which a reason can be given." The Court wrote "that a reasonable doubt may be one defies the jury's ability to express or articulate the reasons for it." Id. at 153. In this case the petitioner did not object to the reasonable doubt instructions. Petitioner respectfully request that this Honorable Court review the reasonable doubt instruction in the interest of justice. For these reasons petitioner should receive a new Trial or in the alternate receive an substantial sentence reduction.

Furthermore, Trial Court erred in not granting petitioner's motion to dismiss. After the People rested its case, defense counsel made a motion pursuant to C.P.L.§ 290.10 (1) (a), to dismiss upon the grounds the trial evidence was legally insufficient to establish the offenses charged. The Trial Court denied petitioner's application, T.T. 11-13-06, 725-732.

---

[2]T.T. Refers to Trial Transcript pages

C.P.L. § 290.10(1) states:

> At the conclusion of the Peoples case or at the conclusion of all the evidence, the Court may except as provided in subdivision two, upon the motion of the defendant, issue a trial order of dismissal, dismissing any count of an indictment upon the ground that the trial evidence is not legally sufficient to establish the offense charged therein or any lesser included offense.

It is respectfully submitted that the trial Court erred in denying defense counsel's motions. Appellate Courts are empowered to review questions of law and fact. They do so in both civil cases (C.P.L.R. § 5501 (c) and criminal cases, *People v. Redmond*, 225 N.Y. 206, 121 N.E. 785; *People v. Stevens*, 104 N.Y. 667, 10 N.E. 527; C.P.L. § 470.15. Indeed, this unique factual review power is the linchpin of our Constitution and Statutory design intended to afford each litigant at least one Appellate review of the facts, *People v. Bleakley*, 69 N.Y. 2d 493, 515 N.Y.S. 2d 761 (Ct. App. 1987). An Appellate determination that the verdict is unsupported by the evidence warrant's dismissal of the indictment, *People v. McCaleb*, 25 N.Y.2d 394. For these reasons petitioner should receive a new Trial or in the alternate receive an substantial sentence reduction.

**GROUND THREE:**

> **PETITIONER WAS DENIED HIS DUE PROCESS RIGHT TO A "FAIR TRIAL" AS ENUMERATED UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNTIED STATES CONSTITUTION, WHERE PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO CALL ANY EXPERT WITNESSES ON PETITIONER'S BEHALF, INTER ALIA.**

**E.    Ineffective Assistance of Counsel.**

**THE *STRICKLAND* STANDARD.**

The Counsel Clause of the Sixth Amendment provides that a criminal Petitioner "shall enjoy the right...to have the assistance of counsel for his defense." U.S. Const. amend. VI. This is "the right to *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)(emphasis added). The Supreme Court has explained that in giving meaning to this requirement courts must be guided by its purpose—"to ensure a fair trial"–and that therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms, *Strickland* at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland* at 694; see also; *Wiggins v. Smith*, 123 S.Ct. 2527, 2635, 2542 (2003); *United States v. Eyman*, 313 F.3d 741, 743 (2nd Cir 2002).

A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland* at 694. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "commutative weight of error" in order to determine whether the prejudice "reach[s] the constitutional threshold." *Lindstadt v. Keane*, 239 F.3d 191,

202 (2nd Cir 2001). Also, ineffective assistance may be demonstrated where counsel performs competently in some respects but not in others, *Eze v. Senkowski*, 321 F.3d 110, 112 (2nd Cir 2003)(Case was remanded to the District Court for an evidentiary hearing on *Eze's* counsel's ineffectiveness.).

The Court of Appeals for the Second Circuit has recently gone so far as to imply that all of counsel's significant trial decisions must be justified by a sound strategy–a significant raising of the bar that would appear to require an unrealistic degree of perfection in counsel as well as the ability to justify largely intuitive decisions based on the arts of trial practice, *Eze* at 136. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The Court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

## F. THE BALDI STANDARD

Although the New York State test of ineffective assistance of counsel is more restrictive and does not afford a defendant with the same protection as the *Strickland* test, the petitioner feels he can show deprivation of his U.S. Constitutional right to the effective assistance of counsel nonetheless.

The key issue presented by this application for a Writ of Habeas Corpus is whether the evidence, the law, and the circumstances of this case, viewed in totality and as of the time of appellate counsel's representation of the appellant, reveal that appellate counsel provided "meaningful representation" to the appellant. See, *People v. Baldi*, 54 N.Y.2d.137, 147; *People v. Stultz*, 2 N.Y.3d 277, 284, 778 N.Y.S.2d 431, 810 N.E.2d 833 (2004). Trial Counsel's errors were so serious that Trial Counsel was not functioning as the "counsel" guaranteed Petitioner by the Sixth Amendment by failing to raise the following issues at Petitioner's trial. Trial Counsel's deficient performance for failing to raise the following issues definitely deprived Petitioner's right to receive a fair Trial warranting petitioner a new and fair trial, or in the alternate, a significant sentence reduction.

In *Osborn v. Shillinger,* 861 F.2d at 627 United States Court of Appeals (10th Cir. 1988) U.S. Circuit Judge Seymour stated Counsel did not have to prepare for a trial because *Osborn* pled guilty, However, Justice Seymour went on to state that the performance of *Osborn's* counsel was constitutionally unreasonable, but more importantly, the evidence presented at his habeas hearing overwhelmingly established that his attorney abandoned the required duty of loyalty to his client. The attorney did not simply make poor strategic choices; he acted with reckless disregard for his client's best interest and, at times, apparently with the intention to weaken his client's case, *Osborn,* 861 F.2d at 629. In this case, defense Counsel rendered ineffective assistance of Counsel. Petitioner's New York State Constitutional Right to an Effective Attorney was violated. Pursuant to New York State Constitution, Article I, Sec. 6, petitioner's right to a competent attorney was violated. It is submitted that petitioner has satisfied the more difficult federal test to establish ineffective assistance of counsel; petitioner meets the lesser New York State Constitutional standard of ineffective. *People v. Baldi,* 54 N.Y. 2d 137, 146-147. In this case, the petitioner established that defense counsel provided less than meaningful representation as set forth in the previous arguments. Therefore, defense Counsel's conduct constitutes ineffective assistance under the New York State Constitution. *People v. Baldi,* 54 N.Y. 2d 137, 146-147; *People v. Benn,* 68 N.Y. 2d 941.

## G.    COUNSEL'S ERRORS

In the case at bar petitioner argued that the trial Court erred in denying petitioner's expert request. Petitioner respectfully contends that defense Counsel was ineffective in failing to file these motions in a timely manner. On the eve of Trial, defense Counsel filed a motion for the appointment of an expert in the field of psychology to testify about coerced and false confessions. Additionally, request, were made for a medical expert to perform a rectal examination and for a qualified neuropsychologist. In denying the defense request, the trial Court noted that the request were made 260 days late and on the eve of the Trial. It is respectfully submitted that the Trial Court Erred in failing to grant petitioner his expert request.

Under C.P.L. § 250.10(2), psychiatric evidence is not admissible by the defense at trial, "unless the

defendant serves upon the People and files with the Court a written notice of his intention to present psychiatric evidence. Such notice, moreover, must be served and filed before trial and not more than thirty days after the entry of the plea of not guilty to the indictment. Id. The trial Court however, may allow later notice to be filed prior to the close of the evidence, where it is in the "Interest of Justice and for good cause shown." Id. The statute further permits the People, upon receiving notice of defense intent to present psychiatric evidence, to seek an order directing the defendant to submit to examination by psychiatrist or psychologist designated by the People, see C.P.L. § 250.10 (3).

In *People v. Gracius,* 6 AD 3d 222 (2004), The Trial Court, as here, found that defendant's C.P.L.§ 250.10 notice was both untimely and lacking an adequate showing that the psychiatric testimony would be admissible as necessary and relevant to a particular defense. The First Department disagreed and balanced the legitimate concerns of both the People and the defendant. The Court ruled that there was no legitimate claim by the People of any prejudice from the delay and given the totality of the facts and circumstances defendant's sanity and his ability to form the requisite intent to commit the crime would be a significant factor at trial.

The Court in *Gracius* noted that the Trial Court's decision to permit the filing of a late notice, in the Interest of Justice, is discretionary. *People v. Berk,* 88 N.Y. 2d 257, 265-266 (1996); *People v. Almonor,* 93 N.Y. 2d 571 (1999). The Trial Court's discretion is not absolute and an abuse of discretion directly implicates a defendant's Constitutional Right to present witnesses in his own defense. Id. at 266. Accordingly, a Trial Court is obliged to balance this Constitutional Right of the defendant with any resulting prejudice to the prosecution from the untimely notice. Id.

In the case at bar, the Trial Court did not balance any interests nor was there any claim by the People that they would be prejudiced. The facts clearly indicate that the petitioner is a very sick man and the use of experts could only aid his defense and better explain his behavior. Trial Court and the States Court's decisions on this issue were and unreasonable application of *People v. Gracius,* 6 AD 3d 222 (2004), in

Page -16-

regards to petitioner's notice requesting and expert being untimely and lacking an adequate showing that the psychiatric testimony would be admissible as necessary and relevant to a particular defense. Therefore, the Trial Court erred in denying the defense request for experts. For these reasons petitioner's application for a Writ of Habeas Corpus should be Granted.

## H.    COUNSEL'S ERRORS

**1. Petitioner's trial Court's Counsel's performance was deficient for allowing Trial Court to Err in denying defendant's Severance Motion.**

On December 19th, 2005, a Suffolk County Grand Jury indicted the petitioner as followed : Counts 1 and 2, Criminal Sexual Act in the First Degree; Count 3, Aggravated Sexual Abuse in the Second Degree; Count 4, Sexual Abuse in the First Degree; Count 5, Sexual Abuse in the First Degree; Counts 6 and 7, Endangering the Welfare of a Child, and Count 8, Petit Larceny. Petitioner respectfully submits, all Counts, with the exception of Counts 5, 7, and 8, related to the same victim and, with exception to Counts 5, and 7, occurred approximately the same time span. Counts 5, 7, and 8, must be severed and tried separately since they involved separate victims and the potential for prejudice.

A Court must sever counts in an indictment that is not properly joined and a misjoinder of counts cannot be considered harmless error. *People v. Communiello,* 180 AD 2d 809 (2nd Dept. 1992). In order for two counts to be part of the same criminal transaction, they consist of conduct that is comprised of two or more acts so closely related and connected in time and circumstance of commission as to constitute a single criminal act or closely related in criminal purpose of objective as to constitute a single criminal venture. C.P.L.§ 202.20 *et seq.,* C.P.L. § 40. 10(2).

This Court has consistently held that the trial Court should permit severance where undue prejudice would occur. The Court should consider the public interest in avoiding duplicative, lengthy and expensive trials against the defendant's interest in being protected from unfair disadvantage. While the  trial Court's must be afforded reasonable latitude in exercising discretion, the defendant's fundamental right to a fair trial

Page -17-

free of undue prejudice is required. *People v. Pinkas,* 156 A.D. 2d 485 (2d Dept. 1989).

In the case at bar, counts 5, 7, and 8, are all separate and discrete criminal transactions with different alleged victims and occurring in different places. There is no claim by the People that the evidence of one would be material and admissible as evidence in chief upon the trial of the other counts. Finally, the incidents alleged here occurred almost a year apart just as in the *Pinkas* case. Therefore, the trial Court erred in denying the defendant's motion for severance. For these reasons petitioner should receive a new Trial or in the alternate receive an substantial sentence reduction.

I.      **COUNSEL'S ERRORS**

      **2. Trial Court failed to adequately charge the Jury.**

Objections to a Jury charge is required to preserve the issue for appellate review. *People v. Gomez,* 137 A.D. 2d 556, 524 N.Y.S. 2d 460 (1988, 2nd Dept.). When objecting to a charge, defendant is required to seek a mistrial or other curative relief so the issue is preserved. *People v. Williams,* 190 A.D. 2d 590, 593 N.Y.S. 2d 789 (1993, 1st Dept.).

Although New York requires preservation of all appealable issues, this Court possesses discretionary power to review un-preserved issues in the Interest of Justice. The trial Court error must be such of magnitude that it deprives defendant of a fair trial, *People v. Antomarchi,* 80 N.Y. 2d 247, 590 N.Y.S. 2d 33 (1990). The Interest of Justice discretionary review power is exercised under the following circumstances: the question on appeal must be fundamental or basic, the alleged error was fundamental and prejudicial or the objection was made in close proximity to the objectionable testimony or proceeding, *People v. Gebrosky,* 80 N.Y. 2d 995, 592 N.Y.S. 2d 650 (1992); *People v. Beasley,* 80 N.Y. 2d 981, 592 N.Y.S. 2d 644 (1992); *People v. Torres,* 80 N.Y. 2d 944, 590 N.Y.S. 2d 867 (1992), & CP.L. § 470. 15(6).

In the case at bar, petitioner is raising two Jury Charge Errors. First, petitioner contends that the trial Court erred by incorrectly charging a Reasonable Doubt Instruction. As petitioner will argue, an incorrect Reasonable Doubt Instruction relieves the Jury of properly judging petitioner's guilt. Relieving the People

of proving petitioner's guilt of each and every element of the crime charged is fundamental, basic and prejudicial to petitioner's right to obtain a fair trial.

Second, petitioner will argue that the trial Court erred by charging the Jury regarding circumstantial evidence. During the charge conference, defense Counsel objected to a circumstantial evidence charge; however, he never made a motion for a new trial. *People v. Williams,* 190 A.D. 2d 590, 593 N.Y.S. 2d 789 (1993, 1st Dept.). Since the Jury was given a choice to find petitioner guilty by direct or circumstantial evidence, it was a fundamental error not to instruct the Jury as requested. Petitioner respectfully request that this Honorable Court review all the charge issues, and for these reasons grant petitioner a new Trial or in the alternate see that petitioner receives an substantial sentence reduction.

## J.      COUNSEL'S ERRORS

### 3. Trial Court erred in denying petitioner's request not to charge circumstantial evidence.

. In the case at bar, prior to charging the jury, defense counsel requested a circumstantial evidence charge not be given. Whenever, a case relies completely on circumstantial evidence to establish all elements of the charge, the jury should be instructed, in substance, that the evidence must establish guilt to a moral certainty, *People v. Daddona,* 81 N.Y. 2d 990, 599 N.Y.S. 2d 530 (1993). However, where a charge is supported with both circumstantial and direct evidence, the Court need not charge the jury, *People v. Gerard,* 50 N.Y. 2d 329, 397-398, 429 N.Y.S. 2d 406.

The giving of circumstantial evidence charge created a biased Jury in which the Jury was permitted to consider a purely circumstantial evidence case. Though defense counsel did not request a mistrial, he did request a circumstantial evidence charge not be given prior to the charge. Consequently, in the Interest of Justice, petitioner respectfully request that this issue be reviewed, and for these reasons can this Honorable Court grant petitioner a new Trial or in the alternate see for executing his Constitutional Right to refuses to plead guilty and go to trial instead.

## K.      Trial Court Error's

**4. Trial Court Erred in its Huntley Hearing Ruling.**

In the case at bar, Detective Kevin Ibanez of the Suffolk County Police Department testified that he became involved in the investigation of A.R. and M.H., two minor children who were allegedly sexually abused by petitioner.

On October 1, 2005, Ibanez received a {C.P.S.} hotline notification that A.R. was sexually abused by the petitioner. Det. Ibanez went to the Thrift Store located in Patchogue, where he met {C.P.S.} worker, Jeanne Highlander. Det. Ibanez spoke with the victim's mother Mrs. Rennie, and observed the petitioner behind. the cash register. Detective Ibanez asked the petitioner if he would come down to Police Headquarters with his to talk about the situation. The petitioner agreed and accompanied Det. Ibanze to Police Headquarters. Det. Ibanze testified prior to questioning petitioner, that he read petitioner his Miranda Rights. Petitioner acknowledged his rights and confessed to having sex with the little boy, {T.T. 10-16-06,11-34}. Petitioner signed a written confession in which he admitted to performing oral sex in a tent on A.R., a three year old boy, {T.T. 10-16-06, 47-49. Additionally, petitioner made a drawing of himself and A.R. in a tent, {T.T. 10-16-06, 56}. In October of 2004, petitioner had admitted he kissed M.M., a 16 month old boy, on the lips, {T.T. 10-16-06, 66}. Additionally, petitioner kept a jar of M.M.'s urine and put his finger in A.R.'s anus, {T.T. 10-16-06, 77, 89}.

Det. Ibanze told the petitioner to come down to the Police Station and straighten this situation out, {T.T. 10-16-06, 114}.

The petitioner argued, that his statements were coerced and the time period between petitioner's Mirandized and making a subsequent admission required fresh Miranda warnings, {T.T. 10-23-06, 54-56}. A statement or confession may not be introduced against a defendant in a criminal proceeding when it is made involuntarily, C.P.L. § 60.41 (1). An involuntary confession occurs when it is obtained from a defendant by the use of physical force or the threat of physical force, by any means of undue pressure or improper conduct which impairs the physical and mental condition and undermines his ability to make a choice, when a Law

Enforcement Officer or his agent induces a statement through a promise which creates a substantial risk that defendant would falsely incriminate himself, or through a violation of the New York or United States Constitutions, C.P.L. § 60.45 (2)(a)(b). Thus, New York seeks to exclude from evidence any statement obtained by any kind of pressure or under any circumstances which the Court and fair-minded people in general do or might consider coercive, unjust, improper or in any way conductive to possible false self-incrimination. Commission Staff Notes to C.P.L. § 60.45.

Therefore, a confession is considered to be involuntary where it is obtained through failure to give Miranda warnings, *Miranda v. Arizona,* 384 U.S. 436 (1966); by custodial interrogation after a request for counsel, *People v. Grant,* 45 N.Y. 2d 366 (1978); by custodial interrogation in the absence of counsel once counsel has become involved in the case, *People v. Cunningham,* 49 N.Y. 2d 203 (1980); or by interrogation in the absence of counsel following the commencement of criminal proceedings, *People v. Skinner,* 52 N.Y. 2d 24 (1980).

In the case at bar, petitioner sought to suppress his statement since it was in violation of *Miranda.* In reviewing the decision of the suppression Court, this Court has applied the abuse of discretion standard of appellate review, *People v. Prochilo,* 41 N.Y. 2d 759 (1977). The People may not use statements or confessions obtained from custodial interrogation unless procedural safeguards guarantee that the accused has been informed and freely waived his Constitutional privileges of the Fifth and Sixth Amendments, *Id.* at 444-45. The procedural safeguards require that a defendant be warned that he has the right to remain silent, that any statement that he does make may be used in evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. A defendant may waive these rights provided that the waiver is made voluntarily, knowingly and intelligently. If, during the interrogation, the defendant indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking, there can be no questioning, *Id.* at 444-45.

Miranda warnings are required before the commencement of custodial interrogation. *Id.* at 444-45. Custodial interrogation is defined as, "questioning initiated by law enforcement officers after a person has

been taken into custody or otherwise deprived of his freedom of action in any significant manner." *Illinois v. Perkins,* 496 U.S. 292, 296 (1990); *Oregon v. Mathiason,* 429 U.S. 492 (1977).

As a preliminary matter, the United States Supreme Court has held that a degree of confinement is required. Initially an inquiry is required to determine the circumstances surrounding the interrogation and, given these circumstances, would a reasonable person have felt that they were not at liberty to terminate the interrogation and leave. Consequently, this Court must determine whether there was a "formal arrest" or restraint on freedom of movement of the degree associated with formal arrest, *Thomas v. Keohane,* 516 U.S. 99 at 465 (1995).

In *Stansbury v. California,* 511 U.S. 318, 323 (1984), the United States Supreme Court explained that the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. The Court reasoned that "the only relevant inquiry is how a reasonable man in the suspects position would have understood his situation." *Id.* (quoting *Berkemer v. McCarty,* 468 U.S. 420, 442 (1984); *Illinois v. Perkins,* 496 U.S. 292, (1990).

In New York, deciding whether a petitioner was in custody prior to receiving his warnings focuses on the objective and not the subjective belief of petitioner. The test is not what the petitioner thought, but rather what a reasonable man, innocent of any crime, would have thought had he been in the petitioner's position, *People v. Yukl,* 25 N.Y. 2d 585, 307 N.Y.S. 2d 857 (1969). However, absent objective proof of restraints, the Court will look at subjective factors, such as had the investigation focused on the suspect, did the police have a probable cause to arrest, what was the subjective intent of interrogation and what was the subjective belief of the suspect. See, *People v. Paulin,* 25 N.Y. 2d 445, 306 N.Y.S. 2d 929 (1969); *United States v. Micieli,* 594 F.2d 102 (5th Cir. 1979).

In the case at bar, the investigative officer used undue influence to get the petitioner to waive his rights and make a statement. Petitioner is a mentally ill person and the detective took advantage of the

petitioner's mental illness which produced a confession that was not a product of free will. Therefore, petitioner's confession was not voluntary and should be suppressed, for these reasons can this Honorable Court grant petitioner a new Trial or in the alternate see that petitioner receives an substantial sentence reduction.

## CONCLUSION

Petitioner has properly demonstrated in this Writ of Habeas Corpus that his Eighth and Fourteenth Amendments Rights to the United States Constitution to receive a fair trial were grossly violated where the disparity in the petitioner's sentencing was unequivocal punishment for executing his Constitutional Right to refuses to plead guilty and go to trial instead. Petitioner has properly demonstrated in this Writ of Habeas Corpus how his Due Process Right to receive a Fair Trial as Enumerated under the Sixth and Fourteenth Amendments to the United States Constitution were violated where Trial Court Erred in it's Reasonable Doubt Instructions to the Jury. Petitioner has properly demonstrated in this Writ of Habeas Corpus how his Due Process Right to receive a Fair Trial as Enumerated under the Sixth and Fourteenth Amendments to the United States Constitution were violated where petitioner received ineffective assistance of counsel where trial counsel failed to call any expert witnesses on petitioner's behalf, *Inter Alia.* Petitioner is not asking this Honorable Court to make a new Rule of Law in this case. The petitioner is merely requesting for this Honorable Court to rule consistent with other Courts concerning in issues where disparity in ones sentencing was punishment for executing his Constitutional Right to refuses to plead guilty and go to trial instead, and petitioner's other mentioned issues to fairly decide petitioner's Writ of Habeas Corpus.

**WHEREFORE,** the undersigned Petitioner, prays that the application for a Writ of Habeas Corpus be granted or in the alternative an Evidentiary Hearing should be held to determine if petitioner should receive a new Trial or in the alternate receive an substantial sentence reduction. Petitioner respectfully

request for your Honorable Court to grant petitioner's Writ of Habeas Corpus, and for such other and further

relief as this Honorable Court may deem just, proper and equitable.

DATE: March ___9___, 2011

       Dannemora, New York

                            Respectfully submitted,

                            Alex Dayton, Din# 07-A-0238
                            Petitioner, "*Pro-Se*"
                            Clinton Correctional Facility Main
                            P.O. Box 2001
                            Dannemora, New York 12929

      I declare under penalty of perjury that the foregoing is correct and true.  Executed on this the ___9.___

day of March  2011, at the Clinton Correctional Facility, Dannemora, New York, in the County of Clinton.

                            Alex Dayton, Din# 07-A-0238
                             Petitioner, "*Pro-Se*"