#2007-00465

To be submitted by
SALVATORE C. ADAMO

# New York Supreme Court
## Appellate Division - Second Department

---

**THE PEOPLE OF THE STATE OF NEW YORK,**

*Respondent,*

*-against-*

**ALEX DAYTON,**

*Defendant-Appellant.*

---

## BRIEF FOR DEFENDANT-APPELLANT

---

SALVATORE C. ADAMO
Attorney for Defendant-Appellant
PMB 185
414 W. Sunrise Highway
Patchogue, NY 11772-2254
(212) 964-7983

# TABLE OF CONTENTS

STATEMENT PURSUANT TO C.P.L.R. 5531 . . . . . . . . . . . . . . . . . . . 1

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 2

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

LEGAL ARGUMENTS

     POINT I

     TRIAL COURT ERRED IN DENYING DEFENDANT'S
     SEVERANCE MOTION . . . . . . . . . . . . . . . . . . . . . . 8

     POINT II

     TRIAL COURT ERRED IN NOT GRANTING DEFENDANT'S
     MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . 10

     POINT III

     TRIAL COURT FAILED TO ADEQUATELY CHARGE THE
     JURY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     POINT IV

     TRIAL COURT ERRED IN ITS *HUNTLEY* RULING . . . . . . . . . . 22

     POINT V

     TRIAL COURT ERRED IN DENYING DEFENDANT'S EXPERT
     REQUESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

i

POINT VI

DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF
COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

POINT VII

DEFENDANT'S SENTENCE WAS EXCESSIVE . . . . . . . . . . . . 36

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . .

PROOF OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

ii

# TABLE OF CITES

## CASES

*Berkemer v. McCarty*, 468 US 420, 442 (1984) . . . . . . . . . . . . . . . . . . . 26

*Berryman v. Morton*, 100 F.3d 1089, 1094 . . . . . . . . . . . . . . . . . . . . 32, 33

*Cage v. Louisiana*, 498 US 39, 40, 111 SCt 328, 112 LEd2d 339 (1990) . . . 19

*Cohen v. Hallmark Cards*, 45 NY2d 493, 499, 410 NYS2d 282 . . . . . . . . 11

*Duncan v. Louisiana*, 391 US 145, 149 88 SCt 1444, 20 LEd2d 491 (1968) . 17

*Harmelin v. Michigan*, 501 US 957 (1991) . . . . . . . . . . . . . . . . . . . . . 36

*Illinois v. Perkins*, 496 US 292, 296 (1990) . . . . . . . . . . . . . . . . . . . . 26

*In re Winship*, 397 US 358, 364, 90 SCt 1068, 25 LEd2d 368, 375 (1970) . . 16, 17

*Jackson v. Virginia*, 443 US 307, 319, 99 SCt 2781, 2789, 61 LEd2d 560 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) . . . . . . . . . . . . . . . 33

*Lockhart v. Fretwell*, 506 U.S. 364 (1993) . . . . . . . . . . . . . . . . . 31, 33, 34

*Miranda v. Arizona*, 384 US 436 (1966) . . . . . . . . . . . . . . . . . . . . . . 24

*Moore v. Deputy Comm'r*, 946 F.2d 236, 246 (3d Cir. 1991), *cert. denied*, 503 U.S. 949 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Oregon v. Mathiason*, 429 US 492 (1977) . . . . . . . . . . . . . . . . . . . . . 26

*People ex rel. MacCracken v. Miller*, 291 NY 55, 62, 50 NE2d 542 . . . . . . 11

iii

*People ex rel. Maurer v. Jackson*, 2 NY2d 259, 264 (1957) . . . . . . . . . . . 37

*People v. Antomarchi*, 80 NY2d 247, 590 NYS2d 33 (1990) . . . . . . . . . . 14

*People v. Aylesworth*, 143 AD2d 353, 532 NYS2d 322 (1988, 2d Dept.) . . . 37

*People v. Baker*, 19 NY2d 982 (1967) . . . . . . . . . . . . . . . . . . . . . . . 38

*People v. Baldi*, 54 N.Y.2d 137, 146-147 . . . . . . . . . . . . . . . . . . . 34, 35

*People v. Baron*, 199 AD2d 326, 606 NYS2d 995 (1993, 2d Dept) . . . . . . . 36

*People v. Beasley*, 80 NY2d 981, 592 NYS2d 644 (1992) . . . . . . . . . . . . 14

*People v. Bellows*, 281 NY 67 . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Benn*, 68 N.Y.2d 941 . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*People v. Berk*, 88 NY2d 257, 265-266 (1996) . . . . . . . . . . . . . . . . . . 29

*People v. Bleakley*, 69 NY2d 493, 515 NYS2d 761 (Ct. App. 1987) . . . . 11-13

*People v. Booden*, 69 NY2d 185 (1987) . . . . . . . . . . . . . . . . . . . . . . 12

*People v. Bowers*, 210 AD2d 830, 608 NYS2d 347 (1994, 3d Dept.) . . . . . . 36

*People v. Brathwaite*, 63 NY2d 839, 843 (1984) . . . . . . . . . . . . . . . . . 38

*People v. Cerio*, 34 AD2d 1095, 312 NYS2d 596 (1970, 4th Dept.) . . . . . . 36

*People v. Christman*, 23 NY2d 429, 434 (1968) . . . . . . . . . . . . . . . . . 38

*People v. Communiello*, 180 AD2d 809 (2d Dept. 1992) . . . . . . . . . . . . . . 8

*People v. Contes*, 60 NY2d 620 . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Cunningham*, 49 NYS2d 203 (1980) . . . . . . . . . . . . . . . . . . . 24

*People v. Daddona*, 81 NY2d 990, 599 NYS2d 530 (1993) . . . . . . . . . . . 16

*People v. Gebrosky*, 80 NY2d 995, 592 NYS2d 650 (1992) . . . . . . . . . . 14

*People v. Gerard*, 50 NY2d 329, 397-398, 429 NYS2d 406 . . . . . . . . . . . 16

*People v. Gomez*, 137 AD2d 556, 524 NYS2d 460 (1988, 2d Dept.) . . . . . . 14

*People v. Gracius*, 6 AD3d 222 (2004) . . . . . . . . . . . . . . . . . . . . . 29

*People v. Grant*, 45 NY2d 366 (1978) . . . . . . . . . . . . . . . . . . . . . . 24

*People v. Hicks*, 189 AD2d 1039, 539 NYS2d 99 (1993, 3d Dept.) . . . . . . 36

*People v. Jones*, 165 AD2d 103, 108 (1st Dept. 1991) . . . . . . . . . . . . . 12

*People v. Klose*, 18 NY2d 141 . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Lopez*, 68 NY2d 683, 506 NYS2d 299 (1986) . . . . . . . . . . . . 14

*People v. McCaleb*, 25 NY2d 394 . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Mikolasko*, 144 AD2d 760, 535 NYS2d 167 (1988, 3d Dept.) . . . . 36

*People v. Morales*, 210 AD2d 173 (1st Dept. 1994) . . . . . . . . . . . . . . . 24

*People v. Patterson*, 106 AD2d 520, 483 NYS2d 55 (1984, 2d Dept.) . . . . . 36

*People v. Patterson*, 39 NY2d 288, 383 NYS2d 573 (1976) . . . . . . . . . . . 14

*People v. Paulin*, 25 NY2d 445, 306 NYS2d 929 (1969) . . . . . . . . . . . . 27

*People v. Pinkas*, 56 AD2d 485 (2d Dept. 1989) . . . . . . . . . . . . . . . . . 9

*People v. Prescott*, 196 AD2d 599, 601 NYS2d 325 (1993 2d Dept.) . . . . . . 36

*People v. Prochilo*, 41 NY2d 759 (1977) . . . . . . . . . . . . . . . . . . . . . . . 24

*People v. Redmond*, 225 NY 206, 121 NE 785 . . . . . . . . . . . . . . . . . . 10

*People v. Robinson*, 36 NY2d 224, 367 NYS2d 208 (1975) . . . . . . . . . . . 15

*People v. Samuel*, 49 NY2d 218 (1980) . . . . . . . . . . . . . . . . . . . . . . 24

*People v. Skinner*, 52 NY2d 24 (1980) . . . . . . . . . . . . . . . . . . . . . . 24

*People v. Smith*, 63 NY2d 41, 52, 479 NYS2d 706, 468 NE2d 879 . . . . . . . 12

*People v. Stevens*, 104 NY 667, 10 NE 527 . . . . . . . . . . . . . . . . . . . 10

*People v. Tanner*, 30 NY2d 102, 108 (1972). . . . . . . . . . . . . . . . . . . . 38

*People v. Tejeda*, 73 NY2d 958, 960 (1989) . . . . . . . . . . . . . . . . . . . 12

*People v. Torres*, 80 NY2d 944, 590 NYS2d 867 (1992) . . . . . . . . . . . . 14

*People v. Truesdell*, 70 NY2d 809, 810-11 (1987) . . . . . . . . . . . . . . . . 38

*People v. Williams*, 190 AD2d 590, 593 NYS2d 789 (1993, 1st Dept.) . 14, 15

*People v. Williams*, 720 NYS2d 811 (1994) . . . . . . . . . . . . . . . . . . . 13

*People v. Yukl*, 25 NY2d 585, 307 NYS2d 857 (1969) . . . . . . . . . . . . . 27

*Reese v. Fulcomer*, 946 F.2d 247, 257 (3d Cir. 1991), *cert. denied*, 503 U.S. 988 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Sparf and Hansen v. United States*, 156 US 51, 105-06, 15 SCt 273, 39 LEd 343 (1895) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Stansbury v. California*, 511 US 318, 323 (1984) . . . . . . . . . . . . . . . . 26

*State v. Hudson*, 286 NJ Super 149, 153 . . . . . . . . . . . . . . . . . . . . . 20

vi

*State v. Vaszorich*, 13 NJ 99, 115 (1953) . . . . . . . . . . . . . . . . . . . .   20

*Strickland v. Washington*, 466 U.S. 668, 687 (1984), *reh'g denied*, 467 U.S.
1267 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31-33

*Sullivan v. Louisiana*, 508 US 275, 113 SCt 2078, 124 LEd2d 182, 188 (1993)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Thomas v. Keohane*, 516 US 99 at 465 (1995) . . . . . . . . . . . . . . . . .   26

*United States v. Adkins*, 937 F2d 947, 950 (4th Cir. 1991) . . . . . . . . . .   18

*United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992) . . . . . . . . . . . .  31, 33

*United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989) . . . . . . . . . . .   33

*United States v. Hall*, 854 F2d 1036, 1039 (7th Cir. 1988) . . . . . . . . . .   18

*United States v. Kauffman*, 109 F.3d 186, 190 (3d Cir. 1997) . . . . . . .  32, 33

*United States v. Micieli*, 594 F2d 102 (5th Cir. 1979) . . . . . . . . . . . .   27

*United States v. Pine*, 609 F2d 106, 107 (3d Cir. 1979) . . . . . . . . . . . .   17

*Victor v. Nebraska*, 511 US 1, 114 SCt 1239, 127 LEd2d 583, 590 (1994) . . 18,
                                                                              19

*Wells v. Petsock*, 941 F.2d 253, 259 (3d Cir. 1991), *cert. denied*, 505 U.S. 1223
(1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   31

*Zettlemoyer v. Fulcomer*, 923 F.2d 284, 296 (3d Cir. 1991), *cert. denied*, 502
U.S. 902 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   32


CPLR § 5501[c] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

Commission Staff Notes to CPL § 60.45 . . . . . . . . . . . . . . . . . . . .   24

CPL § 202.20 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CPL § 250.10(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CPL § 250.10(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CPL § 290.10(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CPL § 40.10(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CPL § 470.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CPL § 470.15(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CPL § 470.20[2] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CPL § 60.41(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CPL § 60.45(2)(a)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CPL § 60.50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CPL § 70.20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

PL § 70.25(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

**OTHER SOURCES**

Cohen and Karger, Powers of the New York Court of Appeals § 112, at 484
[rev. ed.] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fourth Interim Report of the State of New York Temporary Commission on
Revision of the Penal Law and Criminal Code 22 (1965) . . . . . . . . . . . . . 37

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION : SECOND DEPARTMENT

THE PEOPLE OF THE STATE OF NEW YORK,
                                    Respondent,

    *-against-*

ALEX DAYTON,
                                    Appellant.

## STATEMENT PURSUANT TO RULE 5531

1. The indictment number in the Court below was 2921/05.

2. The full names of the original parties are as stated and there have been no changes.  This appeal is on behalf of Alex Dayton.

3. This action was commenced in County Court, Suffolk County.

4. This action was commenced by the filing of an indictment.

5. This appeal is from a judgment convicting appellant, after a trial, of two counts of Criminal Sexual Act, two counts of Aggravated Sexual Assault, one count of Endangering the Welfare of a Child, and Petit Larceny.

6. This is an appeal from a judgment of the County Court, Suffolk County, rendered on January 3, 2007.

7. Appellant has been granted permission to appeal as a poor person on the original record.  The appendix method is not being used.

1

## PRELIMINARY STATEMENT

This is an appeal from a judgment of the County Court, Suffolk County, rendered January 3, 2007, convicting appellant, after a trial, of two counts of Criminal Sexual Act, two counts of Aggravated Sexual Assault, one count of Endangering the Welfare of a Child and Petit Larceny.  Defendant was sentenced to 50 years imprisonment.

A timely Notice of Appeal was filed and on February 28, 2007, this Court granted defendant permission to appeal as a poor person and assigned Robert C. Mitchell as counsel on appeal.  By order of this Court dated June 11, 2007, Robert C. Mitchell was relieved and Salvatore C. Adamo was assigned as counsel on appeal.

No stay of proceedings has been sought and appellant is currently incarcerated pursuant to the appealed judgment..

2

## QUESTIONS PRESENTED

1. Did the trial court err in denying defendant's severance motion?

2. Did the trial court err in not granting defendant's motion to dismiss?

3. Did the trial court fail to adequately charge the jury?

4. Did the trial court err in its *Huntley* ruling?

5. Did the trial court err in denying defendant's expert request?

6. Did defendant receive ineffective assistance of counsel?

7. Was defendant's sentence excessive?

## STATEMENT OF FACTS

Nancy Pickering was introduced to defendant through his step-brother. Ms. Pickering testified that defendant told her that he was in love with A.R. and wanted to marry him but could not since A.R. was a child.  T.T. 11-1-06, 42-47.

John Metzner met defendant through a friend.  Throughout the year 2005, defendant spoke to Metzner regarding two boys named Alex and Michael. Defendant told Metzner that he loved Alex, had oral sex with Alex, fondled Alex, kissed Alex passionately and placed his finger up A.R.'s anus.  Defendant told Metzner that the sex took place in a pup tent next to the thrift store where defendant worked.

Metzner went to the thrift store located in Patchogue and observed the pup tent.  T.T. 11-1-06, 66-83.  Metzner knew that defendant's story of abuse was real so he spoke to a minister named Jamie who is also a police officer.  Metzner then reported what he believed to be sexual abuse of a child to Child Protective Services.  Defendant told Metzner that he cared for Michael and kissed him on the lips.  T.T. 11-1-06, 87-93.

Ms. Jillian Davidson testified that she is defendant's landlady.  According to Davidson, she discovered defendant's diary and pictures which prompted her

4

to call the police.  T.T. 11-2-06, 153-173.  Ms. Davidson stated that defendant liked his job and loved the little boy he was watching named Alex.  T.T. 11-2-06, 174-176.

Detective Kevin Ibanez testified that he became involved in a sexual abuse investigation initiated by Child Protective Services (CPS) regarding A.R. and M.H.  Ibanez learned that John Metzner made the anonymous typ to CPS.

Ibanez, accompanied by Jeanne Highlander of CPS, went to the Second Finding Thrift Store in Patchogue, the site of the sexual abuse.

Ibanez spoke to Mrs. Rennie, the complainant's mother.  Mrs. Rennie was irate at Ibanez and Highlander and would curse and scream at them.

Ibanez went outside the building and observed a pup tent.  Then Ibanez asked defendant, who was behind the cash register, to come to the police station. Defendant complied and at the police station he admitted to performing oral sex on the child as well as kissing another child, M.H., on the lips.

In searching defendant's room, a photo album was discovered.  One of the pictures was defendant and A.R.  Written on the back of the picture was "A.R. my little lover."  On the back of another photo was "A and Al forever."

5

Additionally, defendant's diary was discovered. Defendant's diary verified that he performed oral sex on A.R. T.T. 11-2-06, 187-277. During a search of defendant's room, a jar containing yellow liquid was found. The jar was labeled "Alex urine." T.T. 11-3-06, 361. Defendant admitted that the liquid in the jar was Alex's urine. T.T. 11-3-06, 362.

Ms. Deborah Rennie testified that she owns the store, Second Findings, and has a son named Alex who was born August 30, 2002. In May 2005, Alex was two and a half years old. Defendant was a volunteer at her store.

Ms. Rennie stated that defendant would play with Alex and there was a tent with toys next to the store. Further, defendant would take garbage from the store to Ms. Rennie's house and the back door was always left open. T.T. 11-3-06, 500-520.

Charlene McGrath testified that she is the mother of Michael McGrath and a friend of the defendant. In October 2004, Michael was 14 months old.

According to McGrath, in October 2004, she was in an automobile going to see her son who was in a hospital in Stony Brook. Defendant was in the car and in the back seat with Michael.

6

McGrath heard Michael cry and observed defendant's head near Michael's groin. Ms. McGrath told defendant to stop which he eventually did. McGrath did not call the police.

Again in October 2004, defendant kissed Michael on the mouth. McGrath told defendant to stop because it was inappropriate. For a second time, McGrath did not call the police. T.T. 11-8-06, 552-565.

Doctor Marie Marino testified that A.R.'s anus was penetrated by a finger. T.T. 11-9-06, 664, 659-664.

Mr. Anthony DiCarluccio works for Pepsi and volunteers his time to work at the Second Findings Thrift Store. Mr. DiCarluccio worked with defendant and observed defendant's interaction with A.R. Based on Mr. DiCarluccio's observation, there was never an opportunity for defendant to abuse A.R. T.T. 11-13-06, 744-753.

## POINT I

## TRIAL COURT ERRED IN DENYING DEFEN-
## DANT'S SEVERANCE MOTION.

On December 19, 2005, a Suffolk County Grand Jury indicted defendant as follows: Counts 1 and 2, Criminal Sexual Act in the first degree; Count 3, Aggravated Sexual Abuse in the second degree, Count 4, Sexual Abuse in the first degree; Count 5, Sexual Abuse in the first degree; Counts 6 and 7, Endangering the Welfare of a Child, and Count 8, Petit Larceny.

All counts, with the exception of Counts 5, 7 and 8, related to the same victim and, with exception to Counts 5 and 7, occurred approximately the same time span.

Defendant respectfully submits that Counts 5, 7 and 8 must be severed and tried separately since they involved separate victims and the potential for prejudice denied defendant a fair trial.

A court must sever counts in an indictment that is not properly joined and a misjoinder of counts cannot be considered harmless error. *People v. Communiello*, 180 AD2d 809 (2d Dept. 1992).

In order for two counts to be part of the same criminal transaction, they consist of conduct that is comprised of two or more acts so closely related and

8

connected in time and circumstance of commission as to constitute a single

criminal act or closely related in criminal purpose of objective as to constitute a

single criminal venture.  CPL § 202.20 *et seq.*, CPL § 40.10(2).

   This court has consistently held that the trial court should permit severance

where undue prejudice would occur.  The court should consider the public

interest in avoiding duplicative, lengthy and expensive trials against the defen-

dant's interest in being protected from unfair disadvantage.  While the trial courts

must be afforded reasonable latitude in exercising discretion, the defendant's

fundamental right to a fair trial tree of undue prejudice is required.  *People v.*

*Pinkas*, 56 AD2d 485 (2d Dept. 1989).

   In this case, counts 5, 7 and 8 are all separate and discrete criminal

transactions with different alleged victims and occurring in different places.

There is no claim by the People that the evidence of one would be material and

admissible as evidence in chief upon the trial of the other counts.  Finally, the

incidents alleged here occurred almost a year apart just as in the *Pinkas* case.

   Therefore, the trial court erred in denying defendant's motion for sever-

ance.

9

## POINT II

## THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANT'S MOTION TO DISMISS.

After the People rested its case, defense counsel made a motion, pursuant to CPL § 290.10(1)(a), to dismiss upon the grounds that the trial evidence was legally insufficient to establish the offenses charged.  The trial court denied defendant's application.  T.T. 11-13-06, 725-732.

CPL § 290.10(1) states:

> 1.      At the conclusion of the People's case or at the conclusion of all the evidence, the court may, except as provided in subdivision two, upon motion of the defendant, issue a "trial order of dismissal," dismissing any count of an indictment upon the ground that the trial evidence is not legally sufficient to establish the offense charged therein or any lesser included offense.

It is respectfully submitted that the trial court erred in denying defense counsel's motions.

Appellate courts are empowered to review questions of law and fact.  They do so in both civil cases (CPLR § 5501[c]) and criminal cases.  *People v. Redmond*, 225 NY 206, 121 NE 785; *People v. Stevens*, 104 NY 667, 10 NE 527; CPL § 470.15.  Indeed, this unique factual review power is the linchpin of our constitutional and statutory design intended to afford each litigant at least one

10

appellate review of the facts. *People v. Bleakley*, 69 NY2d 493, 515 NYS2d 761

(Ct. App. 1987).  An appellate determination that the verdict is unsupported by

the evidence warrants dismissal of the indictment. *People v. McCaleb*, 25 NY2d

394; *People v. Klose*, 18 NY2d 141; *People v. Bellows*, 281 NY 67.

For a court to conclude that a verdict is supported by sufficient evidence,

there must be a determination whether a valid line of reasoning and permissible

inference could lead a rational person to the conclusion reached by the jury

and/or trial judge on the basis of the evidence at trial (*Cohen v. Hallmark Cards*,

45 NY2d 493, 499, 410 NYS2d 282) and as a matter of law satisfy the proof and

burden requirements for every element of the crime charged.  CPL § 70.20.

To determine whether a verdict is supported by the weight of the evidence,

however, the appellate court's dispositive analysis is not limited to that legal test.

Even if all the elements and necessary findings are supported by some credible

evidence, the court must examine the evidence further.  If, based on all the

credible evidence, a different finding would not have been unreasonable, then the

appellate court must, like the trier of fact below, "weigh the relative probative

force of conflicting testimony and the relative strength of conflicting inferences

that may be drawn from the testimony." *People ex rel. MacCracken v. Miller*,

11

291 NY 55, 62, 50 NE2d 542; compare, *People v. Smith*, 63 NY2d 41, 52, 479 NYS2d 706, 468 NE2d 879; see also, Cohen and Karger, <u>Powers of the New York Court of Appeals</u> § 112, at 484 [rev. ed.]. If it appears that the trier of fact has failed to give the evidence the weight it should be accorded, then the appellate court may set aside the verdict. CPL § 470.20[2].

In the instant matter, defense counsel argues that defendant's confession establishing the elements of the crimes was not corroborated by independent witnesses or scientific evidence and should be dismissed. See, CPL § 60.50; *People v. Booden*, 69 NY2d 185 (1987).

A verdict should be set aside as based on legally insufficient evidence when no reasonable jury could have convicted based on the trial evidence, when viewed in the light most favorable to the People and giving them the benefit of every reasonable inference to be drawn therefrom. *People v. Tejeda*, 73 NY2d 958, 960 (1989); *People v. Bleakley*, 69 NY2d 490, 495 (1987). It is also well-settled that matters of credibility are ordinarily "reserved for the triers of fact, who have had the opportunity to observe the demeanor of the witnesses and are therefore in the best position to weight their testimony." *People v. Jones*, 165 AD2d 103, 108 (1st Dept. 1991). Similarly, a verdict should be overturned as

12

against the weight of the evidence only where "it appears that the trier of fact has failed to give the evidence the weight that it should be accorded." *People v. Bleakley*, 69 NY2d at 495.

The constitutional issue to be decided with respect to this claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 US 307, 319, 99 SCt 2781, 2789, 61 LEd2d 560 (1979); *People v. Contes*, 60 NY2d 620.

A court reviewing legal sufficiency of the trial evidence must determine whether any valid line of reasoning and permissible inference could lead a rational person to the conclusion reached by the factfinder on the basis of the evidence at trial. *People v. Williams*, 720 NYS2d 811 (1994).

For the reasons stated, the appellant respectfully requests that a judgment of acquittal be entered.

13

## POINT III

## THE TRIAL COURT FAILED TO ADEQUATELY CHARGE THE JURY.

An objection to a jury charge is required to preserve the issue for appellate review. *People v. Gomez*, 137 AD2d 556, 524 NYS2d 460 (1988, 2d Dept.) When objecting to a charge, defendant is required to seek a mistrial or other curative relief so the issue is preserved. *People v. Williams*, 190 AD2d 590, 593 NYS2d 789 (1993, 1st Dept.)

Although New York requires preservation of all appealable issues, this court possesses discretionary power to review unpreserved issues in the interest of justice. The trial error must be of such magnitude that it deprives defendant of a fair trial. *People v. Antomarchi*, 80 NY2d 247, 590 NYS2d 33 (1990).

The interest of justice discretionary review power is exercised under the following circumstances:  the question on appeal must be fundamental or basic, the alleged error was fundamental and prejudicial or the objection was made in close proximity to the objectionable testimony or proceeding. *People v. Gebros-ky*, 80 NY2d 995, 592 NYS2d 650 (1992); *People v. Beasley*, 80 NY2d 981, 592 NYS2d 644 (1992); *People v. Torres*, 80 NY2d 944, 590 NYS2d 867 (1992); *People v. Lopez*, 68 NY2d 683, 506 NYS2d 299 (1986); *People v. Patterson*, 39

14

NY2d 288, 383 NYS2d 573 (1976); *People v. Robinson*, 36 NY2d 224, 367

NYS2d 208 (1975); CPL § 470.15(6).

Defendant is raising two jury charge errors in this case. First, defendant

contends that the trial court erred by incorrectly charging a reasonable doubt

instruction. As defendant will argue, an incorrect reasonable doubt instruction

relieves the jury of properly judging defendant's guilt. Relieving the People of

proving defendant's guilt of each and every element of the crime charged is

fundamental, basic and prejudicial to defendant's right to obtain a fair trial.

Second, defendant will argue that the trial court erred by charging the jury

regarding circumstantial evidence. During the charge conference, defense

counsel objected to a circumstantial evidence charge; however, he never made a

motion for a new trial. *People v. Williams*, 190 AD2d 590, 593 NYS2d 789 (1st

Dept. 1993). Since the jury was given a choice to find defendant guilty by direct

or by circumstantial evidence, it was a fundamental error not to instruct the jury

as requested.

For all the reasons stated so far and all the reasons that will be stated in the

proceeding arguments, defendant requests that this court review all the charge

issues.

15

**A.**   **Trial court erred in denying defendant's request not to charge circum-
stantial evidence.**

Prior to charging the jury, defense counsel requested a circumstantial
evidence charge not be given.  Whenever a case relies wholly on circumstantial
evidence to establish all elements of the charge, the jury should be instructed, in
substance, that the evidence must establish guilt to a moral certainty.  *People v.
Daddona*, 81 NY2d 990, 599 NYS2d 530 (1993).  However, where a charge is
supported with both circumstantial and direct evidence, the court need not charge
the jury.  *People v. Gerard*, 50 NY2d 329, 397-398, 429 NYS2d 406.

The giving of a circumstantial evidence charge created a biased jury in
which the jury was permitted to consider a purely circumstantial evidence case.
Though defense counsel did not request a mistrial, he did request a circumstantial
evidence charge not be given prior to the charge.  Consequently, in the interest of
justice, defendant respectfully requests that this issue be reviewed and a new trial
be granted since he was denied a fair trial by an incorrect jury charge.

**B.**   **The trial court erred in its reasonable doubt instruction.**

In a criminal prosecution, the State bears the burden of proving beyond a
reasonable doubt every element of an offense.  *In re Winship*, 397 US 358, 364,

16

90 SCt 1068, 25 LEd2d 368, 375 (1970).  The due process clauses of the Federal

Constitution, *Sullivan v. Louisiana*, 508 US 275, 113 SCt 2078, 124 LEd2d 182,

188 (1993), *Winship, supra*, 397 US at 364, *United States v. Pine*, 609 F2d 106,

107 (3d Cir. 1979), and the New York Constitution compel this standard.

Under the Sixth Amendment, the jury, not the court, determines guilt in a

serious criminal case.  See, *Duncan v. Louisiana*, 391 US 145, 149 88 SCt 1444,

20 LEd2d 491 (1968); *Sparf and Hansen v. United States*, 156 US 51, 105-06, 15

SCt 273, 39 LEd 343 (1895).  Due process mandates that "the jury verdict

required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable

doubt." *Sullivan, supra*, 124 LEd2d at 188.  A jury instruction that fails to

communicate the People's burden to prove guilt beyond a reasonable doubt is not

amenable to harmless error analysis and requires reversal. *Id.*, 124 LEd2d at

189-90.

The reasonable doubt standard provides "concrete substance for the

presumption of innocence," and reduces the risk of wrongful conviction.

*Winship, supra*, 397 US at 363, 25 LEd2d at 375.  It assures that a defendant will

not be convicted if reasonable doubt exists about his or her guilt. *Id.* at 363-64.

17

Notwithstanding its venerated role, the standard is problematic.  As the United States Supreme Court lamented, "[a]lthough this standard is an ancient and honored aspect of our criminal justice system, it defies easy explication." *Victor v. Nebraska*, 511 US 1, 114 SCt 1239, 127 LEd2d 583, 590 (1994). Neither the New York Constitution nor the Federal Constitution explicitly demands that trial courts define reasonable doubt.  Both constitutions require only that the trial court inform the jury of the People's burden to prove the defendant's guilt beyond a reasonable doubt.

Neither Constitution defines reasonable doubt.  Understandably, trial courts have struggled in explaining the People's burden.  Some federal circuit courts of appeal have instructed district courts not to try to define the beyond-a-reasonable-doubt standard because the definitions are frequently either unhelpful or inaccurate.  See, e.g., *United States v. Adkins*, 937 F2d 947, 950 (4th Cir. 1991) ("This circuit has repeatedly warned against giving the jury definitions of reasonable doubt, because definitions tend to impermissibly lessen the burden of proof . . . The only exception to our categorical disdain for definition is when the jury specifically requests it."); *United States v. Hall*, 854 F2d 1036, 1039 (7th Cir. 1988) (upholding district court's refusal to provide definition, despite jury's

18

request, because, "at best, definitions of reasonable doubt are unhelpful to a jury

. . . An attempt to define reasonable doubt presents a risk without any real

benefit.").

The United States Supreme Court has held that a jury instruction that

partially defined reasonable doubt, as "such a doubt as would give rise to a grave

uncertainty," and as "an actual substantial doubt," violated the Due Process

Clause. *Cage v. Louisiana*, 498 US 39, 40, 111 SCt 328, 112 LEd2d 339

(1990). The Court explained that "the words 'substantial' and 'grave' as they are

commonly understood suggest a higher degree of doubt than is required for

acquittal under the reasonable doubt standard," *Id.* at 41. Although the Court

disapproves of equating the reasonable doubt standard with "moral certainty," an

instruction that makes the equation will not violate due process if the charge also

emphasizes that the jurors must base their conclusion on the evidence. *Victor,*

*supra*, 127 LEd2d at 596-97.

Because "the Constitution does not require that any particular form of

words be used in advising the jury of the government's burden of proof," *id.* 127

LEd2d at 590, reasonable doubt instructions must be considered in their entirety.

19

Only those instructions that overall lessen the People's burden of proof violate due process.

Defendant contends that the instruction improperly diminished the People's burden of proof.  When explaining reasonable doubt to the jury, the trial court stated, "a reasonable doubt is an honest doubt of the defendant's guilt for which a reason exists based upon the nature and quality of the evidence."  T.T. 11-14-06, 876.  This statement erroneously implied that the jury must find an articulable reason to support its doubts about the People's case.  See, *State v. Vaszorich*, 13 NJ 99, 115 (1953) (holding that the statement contained in a juror pamphlet that "a reasonable doubt is one for which, should he be called upon, a juror can give a reason," was "obviously erroneous under our law.")  Jurors may harbor a valid reasonable doubt even if they cannot explain the reason for the doubt.

In *State v. Hudson*, 286 NJ Super 149, 153, the New Jersey Appellate Division disapproved of a similar definition of reasonable doubt as a "doubt for which a reason can be given."  The court wrote "that a reasonable doubt may be one that defies the jury's ability to express or articulate the reasons for it."  *Id.* at 153.

20

In this case defense counsel did not object to the reasonable doubt instruction. Defendant respectfully requests that this court review the reasonable doubt instruction in the interest of justice and grant him a new trial.

**POINT IV**

TRIAL COURT ERRED IN ITS *HUNTLEY* RULING.

*Huntley* Hearing Statement of Facts

Detective Kevin Ibanez of the Suffolk County Police Department testified that he became involved in the investigation of A.R. and M.M., two minor children who were allegedly sexually abused by defendant.

On October 1, 2005, Ibanez received a CPS hotline notification that A.R. was sexually abused by defendant.  Detective Ibanez went to the Second Finding Thrift Store, located at 4267 East Main Street, Patchogue, where he met a CPS worker, Jeanne Highlander.  Ibanez spoke to the victim's mother, Mrs. Rennie, and observed the defendant behind the cash register.

According to Ibanez, he told defendant that he was going down to police headquarters to talk about this situation.  Defendant agreed and accompanied Ibanez to police headquarters.  Ibanez testified that prior to questioning defendant, he read defendant his Miranda rights.  Defendant acknowledged his rights and confessed to having sex with the little boy.  T.T. 10-16-06, 11-34.

Defendant signed a written confession in which he admitted to performing oral sex in a tent on A.R., a three-year-old boy.  T.T. 10-16-06, 47-49.  Addi-

22

tionally, defendant made a drawing of himself and A.R. in a tent. T.T. 10-16-06, 56. In October 2004, defendant admitted to kissing M.M., a 16-month-old boy, on the lips. T.T. 10-16-06, 66. Additionally, defendant kept a jar of M.M.'s urine and put his finger in A.R.'s anus. T.T. 10-16-06, 77, 89.

Ibanez told defendant to come down to the police station and straighten this situation out. T.T. 10-16-06, 114.

The defense argued that defendant's statements were coerced and the time period between defendant's being Mirandized and making a subsequent admission required fresh Miranda warnings. T.T. 10-23-06, 54-58.

A statement or confession may not be introduced against a defendant in a criminal proceeding when it is made involuntarily. CPL § 60.41(1). An involuntary confession occurs when it is obtained from a defendant by the use of physical force or the threat of physical force, by any means of undue pressure or improper conduct which impairs the physical and mental condition and undermines his ability to make a choice, when a law enforcement officer or his agent induces a statement through a promise which creates a substantial risk that defendant would falsely incriminate himself, or through a violation of the New York or United States Constitutions. CPL § 60.45(2)(a)(b). Thus, New York

23

seeks to exclude from evidence any statement obtained by any kind of pressure or under any circumstances which the court and fair-minded people in general do or might consider coercive, unjust, improper or in any way conducive to possible false self-incrimination.  Commission Staff Notes to CPL § 60.45.

Therefore, a confession is considered to be involuntary where it is obtained through failure to give *Miranda* warnings, *Miranda v. Arizona*, 384 US 436 (1966); by custodial interrogation after a request for counsel, *People v. Grant*, 45 NY2d 366 (1978); by custodial interrogation in the absence of counsel once counsel has become involved in the case, *People v. Cunningham*, 49 NYS2d 203 (1980); or by interrogation in the absence of counsel following the commence-ment of criminal proceedings. *People v. Samuel*, 49 NY2d 218 (1980); *People v. Skinner*, 52 NY2d 24 (1980).

In this case defendant sought to suppress his statement since it was in violation of *Miranda*.  In reviewing the decision of the suppression court, this court has applied the abuse of discretion standard of appellate review. *People v. Prochilo*, 41 NY2d 759 (1977); *People v. Morales*, 210 AD2d 173 (1st Dept. 1994).

24

The essence of *Miranda* is that custodial interrogation is inherently coercive. Consequently, the People may not use statements or confessions obtained from custodial interrogation unless procedural safeguards guarantee that the accused has been informed and freely waived his constitutional privileges of the Fifth and Sixth Amendments. *Id.* at 444-45. The procedural safeguards require that a defendant be warned that he has the right to remain silent, that any statement that he does make may be used in evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

Defendant may waive these rights provided that the waiver is made voluntarily, knowingly and intelligently. If, during the interrogation, the defendant indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking, there can be no questioning. *Id.* at 444-45.

Miranda warnings are required before the commencement of custodial interrogation. *Id.* at 444-45. Custodial interrogation is defined as, "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant manner."

*Illinois v. Perkins*, 496 US 292, 296 (1990); *Oregon v. Mathiason*, 429 US 492 (1977).

As a preliminary matter, the United States Supreme Court has held that a degree of confinement is required. Initially an inquiry is required to determine the circumstances surrounding the interrogation and, given these circumstances, would a reasonable person have felt that they were not at liberty to terminate the interrogation and leave. Consequently, this court must determine whether there was a "formal arrest" or restraint on freedom of movement of the degree associated with formal arrest. *Thomas v. Keohane*, 516 US 99 at 465 (1995).

In *Stansbury v. California*, 511 US 318, 323 (1984), the United States Supreme Court explained that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. The court reasoned that "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Id.* (quoting *Berkemer v. McCarty*, 468 US 420, 442 (1984)); *Illinois v. Perkins*, 496 US 292 (1990).

In New York, deciding whether a defendant was in custody prior to receiving his warnings focuses on the objective and not the subjective belief of

26

defendant. The test is not what the defendant thought, but rather what a reasonable man, innocent of any crime, would have thought had he been in the defendant's position. *People v. Yukl*, 25 NY2d 585, 307 NYS2d 857 (1969). However, absent objective proof of restraints, the court will look at subjective factors, such as had the investigation focused on the suspect, did the police have a probable cause to arrest, what was the subjective intent of interrogation and what was the subjective belief of the suspect. See, *People v. Paulin*, 25 NY2d 445, 306 NYS2d 929 (1969); *United States v. Micieli*, 594 F2d 102 (5th Cir. 1979).

Here, the investigator used undue influence to get defendant to waive his rights and make a statement. Defendant is a mentally ill person and the detective took advantage of his illness which produced a confession that was not a product of free will. Therefore, defendant's confession was not voluntary and must be suppressed.

27

## POINT V

### TRIAL COURT ERRED IN DENYING DEFEN-DANT'S REQUEST FOR EXPERTS.

On the eve of trial, defense counsel filed a motion for the appointment of an expert in the field of psychology to testify about coerced and false confessions. Additionally, requests were made for a medical expert to perform a rectal examination and for a qualified neuropsychologist.

In denying the defense request, the trial court noted that the requests were made 260 days late and on the eve of trial. It is respectfully submitted that the trial court erred in failing to grant defendant his expert request.

Under CPL § 250.10(2), psychiatric evidence is not admissible by the defense at trial, "unless the defendant serves upon the People and files with the court a written notice of his intention to present psychiatric evidence." Such notice, moreover, "must be served and filed before trial and not more than thirty days after the entry of the plea of not guilty to the indictment. *Id.* The trial court, however, may allow later notice to be filed prior to the close of the evidence, where it is in the "interest of justice and for good cause shown." *Id.* The statute further permits the People, upon receiving notice of defense intent to present psychiatric evidence, to seek an order directing the defendant to submit to

28

examination by a psychiatrist or psychologist designated by the People.  See,

CPL § 250.10(3).

In *People v. Gracius*, 6 AD3d 222 (2004), the trial court, as here, found

that defendant's CPL § 250.10 notice was both untimely and lacking an adequate

showing that the psychiatric testimony would be admissible as necessary and

relevant to a particular defense.  The First Department disagreed and balanced

the legitimate concerns of both the People and the defendant.  The court ruled

that there was no legitimate claim by the People of any prejudice from the delay

and given the totality of the facts and circumstances defendant's sanity and his

ability to form the requisite intent to commit the crime would be a significant

factor at trial.

The court in *Gracius* noted that the trial court's decision to permit the

filing of a late notice, in the interest of justice, is discretionary.  *People v. Berk*,

88 NY2d 257, 265-266 (1996); *People v. Almonor*, 93 NY2d 571 (1999).  The

trial court's discretion is not absolute and an abuse of discretion directly "impli-

cates a defendant's constitutional right to present witnesses in his own defense."

*Id*. at 266.  Accordingly, a trial court is obliged to balance this constitutional

right of the defendant with any resulting prejudice to the prosecution from the untimely notice. *Id.*

Here, the trial court did not balance any interests nor was there any claim by the People that they would be prejudiced. The facts clearly indicate that defendant is a very sick man and the use of experts could only aid his defense and better explain his behavior. Therefore, the trial court erred in denying the defense request for experts.

30

## POINT VI

## THE DEFENDANT RECEIVED INEFFECTIVE AS-
## SISTANCE OF TRIAL COUNSEL.

**A.  Defendant's United States Constitutional Right to an Effective
Attorney Was Violated.**

Defendant contends that he was denied the effective assistance of counsel

in violation of the Sixth Amendment of the United States Constitution.

A defendant has a Sixth Amendment right to the effective assistance of

counsel. See, *Strickland v. Washington*, 466 U.S. 668, 687 (1984), *reh'g denied*,

467 U.S. 1267 (1984); see also, *Wells v. Petsock*, 941 F.2d 253, 259 (3d Cir.

1991), *cert. denied*, 505 U.S. 1223 (1992).  To establish a claim of ineffective

assistance of counsel, a petitioner must show:

> (1) his or her attorney's performance was, under all the
> circumstances, unreasonable under prevailing profes-
> sional norms, and, . . . (2) there is a "reasonable proba-
> bility that, but for counsel's unprofessional errors, the
> result would have been different."

*United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992) (citing *Strickland*, 466 U.S.

at 687-91, 694).

The first prong of an ineffective assistance claim is "deficient perfor-

mance." See, *Lockhart v. Fretwell*, 506 U.S. 364 (1993).  A defendant must

31

"show that counsel's representation fell below an objective standard of reason-

ableness." *Strickland*, 466 U.S. at 688; see also, *Berryman v. Morton*, 100 F.3d

1089, 1094. In *Strickland*, the Supreme Court stated:

> A convicted defendant making a claim of ineffective
> assistance must identify the acts or omissions of counsel
> that are alleged not to have been the result of reasonable
> professional judgment.  The court must then determine
> whether, in light of all the circumstances, the identified
> acts or omissions were outside the wide range of profes-
> sionally competent assistance.

*Strickland*, 466 U.S. at 690; see also, *United States v. Kauffman*, 109 F.3d 186,

190 (3d Cir. 1997); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 296 (3d Cir. 1991),

*cert. denied*, 502 U.S. 902 (1991) (defense counsel cannot be deemed ineffective

just because counsel is not successful).

In analyzing defendant's claim of ineffective assistance of counsel, "[a] fair

assessment of attorney performance requires that every effort be made to elimi-

nate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct, and to evaluate the conduct from counsel's per-

spective at the time." *Strickland*, 466 U.S. at 689; *Moore v. Deputy Comm'r*,

946 F.2d 236, 246 (3d Cir. 1991), *cert. denied*, 503 U.S. 949 (1992).  "[A] court

must indulge a strong presumption that counsel's conduct falls within the wide

32

range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; see also, *Kauffman*, 109 F.3d at 189; *Berryman*, 100 F.3d at 1094; *Reese v. Fulcomer*, 946 F.2d 247, 257 (3d Cir. 1991), *cert. denied*, 503 U.S. 988 (1992); *Moore*, 946 F.2d at 246; *United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989).

The second prong of the *Strickland* test requires a defendant to demonstrate prejudice, defined as a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *Strickland*, 466 U.S. at 694; see, *Fretwell*, 506 U.S. at 369; *Day*, 969 F.2d at 42. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The prejudice component of an ineffective assistance determination asks whether "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).  In *Lockhart* the Court clarified the prejudice inquiry:

> [A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.  To set aside a conviction or sentence solely

33

> because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him.

*Lockhart*, 506 U.S. at 369-70.

In this case defendant argued that the trial court erred in denying defendant's expert request.  Should this court choose to affirm the trial court's decision, defendant respectfully contends that defense counsel was ineffective in failing to file these motions in a timely manner.  Therefore, defense counsel rendered ineffective assistance of counsel.

**B.   Defendant's New York State Constitutional Right to an Effective Attorney Was Violated.**

Pursuant to New York State Constitution, Article I, Sec. 6, defendant's right to a competent attorney was violated.  It is submitted that defendant has satisfied the more difficult federal test to establish ineffective assistance of counsel; however, in the event that this court disagrees, defendant meets the lesser New York State Constitutional standard of ineffective assistance. *People v. Baldi*, 54 N.Y.2d 137, 146-147.

In this case, the defendant established that defense counsel provided less than meaningful representation as set forth in the previous arguments.  Therefore, defense counsel's conduct constitutes ineffective assistance under the New

34

York State Constitution.  *People v. Baldi*, 54 N.Y.2d 137, 146-147; *People v. Benn*, 68 N.Y.2d 941.

35

## POINT VII

### DEFENDANT'S SENTENCE WAS EXCESSIVE.

The United States Constitutional provision against cruel and unusual

punishment forbids grossly disproportionate sentences. U.S. Const. Amendment

8; *Harmelin v. Michigan*, 501 US 957 (1991); *People v. Prescott*, 196 AD2d

599, 601 NYS2d 325 (1993 2d Dept.).  A sentence whose object is retribution

rather than reformation and rehabilitation is excessive. *People v. Patterson*, 106

AD2d 520, 483 NYS2d 55 (1984, 2d Dept.)

A sentence of imprisonment may be reduced where it is excessive and an

abuse of discretion. *People v. Cerio*, 34 AD2d 1095, 312 NYS2d 596 (1970, 4th

Dept.)  To determine whether a defendant's sentence may be reduced in the

exercise of discretion in the interest of justice, the court may consider the

defendant's age, health, prior record, defendant's history of substance abuse, a

sentence imposed for a co-defendant's conviction for the same offense, defen-

dant's potential for rehabilitation and defendant's remorsefulness for his action.

*People v. Baron*, 199 AD2d 326, 606 NYS2d 995 (1993, 2d Dept); *People v.*

*Mikolasko*, 144 AD2d 760, 535 NYS2d 167 (1988, 3d Dept.); *People v. Bowers*,

210 AD2d 830, 608 NYS2d 347 (1994, 3d Dept.); *People v. Hicks*, 189 AD2d

36

1039, 539 NYS2d 99 (1993, 3d Dept.); *People v. Aylesworth*, 143 AD2d 353,

532 NYS2d 322 (1988, 2d Dept.)

Here, defendant was sentenced to the maximum sentence of 50 years.

Defendant was sentenced so severely because he protested his innocence and

refused to accept a plea bargain prior to indictment of five years and immediately

prior to trial of 13 years.  The trial court's sentence was based on retribution

which is contrary to the principles of sentencing in this state.

Further, defendant was sentenced to consecutive periods of incarceration

for the Criminal Sexual Acts in the first degree counts.

Under PL § 70.25(2), concurrent sentences may be imposed on a person

who commits two or more offenses through a single act or omission.  This

statutory formulation constitutes a restatement of the consecutive sentence

restriction in Section 1938 of the former Penal Law, as interpreted by this Court

in *People ex rel. Maurer v. Jackson*, 2 NY2d 259, 264 (1957); Fourth Interim

Report of the State of New York Temporary Commission on Revision of the

Penal Law and Criminal Code 22 (1965).  Faced only with the question of

whether concurrent sentences could be imposed for a single act or omission that

violated more than one statute, the Court of Appeals held in *Jackson* that concur-

37

rent sentences were permissible in such circumstances, but noted that consecutive sentences would not be. *Id.* at 264-66.

Consecutive sentences have been approved only in two circumstances. The first situation is where one crime occurs after the other offense is complete and "appears as an unnecessary afterthought of the other," *People v. Tanner*, 30 NY2d 102, 108 (1972) (murder committed after robbery was complete); *see People v. Baker*, 19 NY2d 982 (1967) (unlawful entry of an apartment and petit larceny committed once inside). Consecutive sentences may also be ordered where the defendant harms two different victims through two separate acts. *People v. Truesdell*, 70 NY2d 809, 810-11 (1987); *People v. Brathwaite*, 63 NY2d 839, 843 (1984).

On the other hand, a court may not sentence a defendant consecutively where his conduct violates two statutes, but is "so unified with the basic acts made criminal by the Penal Law that [it] could not be made the basis for separate punishments." *People v. Christman*, 23 NY2d 429, 434 (1968). Accordingly, consecutive sentences are not justified where two crimes are committed in the course of the same criminal transaction and one crime is incidental to the other.

38

Here, the trial court's decision to impose consecutive sentences was in error.  Defendant's alleged crimes were part of the overall scheme and it is respectfully submitted that the Criminal Sexual Acts counts should run concurrent to each other and that defendant's sentence should be reduced.

39

## CONCLUSION

For the reasons stated, defendant respectfully requests that the judgment of conviction be vacated and a new trial ordered.

Respectfully submitted,

SALVATORE C. ADAMO
Attorney for Defendant-Appellant
PMB 185
415 W. Sunrise Highway
Patchogue, NY 11772-2254
(212) 964-7983

Dated: November 11, 2008

40

## CERTIFICATE OF COMPLIANCE
### PURSUANT TO 22 NYCRR § 670.10.3(f)

The foregoing brief was prepared on a computer.  A proportionally spaced typeface was used, as follows:

| | |
|---|---|
| Name of typeface: | CG Times |
| Point size: | 14 |
| Line spacing: | Double |

The total number of words in the brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of citations, proof of service, certificate of compliance, or any authorized addendum containing statutes, rules, regulations, etc., is 6,893.

41

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT

PROOF OF
SERVICE

People of the State of New York,

                          Respondent,

        - against -

ALEX DAYTON,

                   Defendant-Appellant.

App. Docket Nos.
2007-00465

STATE OF NEW YORK   :

                   ss:

COUNTY OF SUFFOLK   :

      The undersigned, an attorney duly admitted to practice law in the State of New York, under penalty of perjury affirms as follows:

      On this day I served the following parties the within Brief via prepaid first class mail.

James Edward Pelzer, Clerk               9 copies, PSI
Supreme Court of the State of New York
Appellate Division: Second Department
45 Monroe Place
Brooklyn, NY 11201

Thomas J. Spota, III, Esq.            1 copy, transcript, PSI
Suffolk County District Attorney
Criminal Courts Complex
200 Center Drive
Riverhead, NY 11901

Alex Dayton, 07A0238                1 copy
Clinton Correctional Facility
PO Box 2001
Dannemora, NY 12929

Dated:  November 12, 2008

                                   Salvatore C. Adamo