

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ALEX DAYTON,

                Petitioner,

     -against-

THOMAS LaVALLEY,

                Respondent.
-----------------------------------------------------------X

**MEMORANDUM & ORDER**
11-CV-1261 (TCP)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 15 2014 ★
LONG ISLAND OFFICE

PLATT, District Judge.

Before the Court is Alex Dayton's ("Petitioner") Petition for a Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2254. ECF No. 1. The Petition challenges Petitioner's conviction, following a jury trial in New York State Supreme Court (Suffolk County), and the subsequently imposed sentence. Pet'r's Pet. 1. The Court **DENIES** the Petition.

## BACKGROUND

### A. Facts

Petitioner was a customer of a second-hand store in Patchogue named "Second Findings". Resp't's Mem. L. 3 (citing Trial Tr. 501). The store was owned by DR and Mrs. R.[1] *Id.* In May 2005, Petitioner became a volunteer employee at the store and he worked at the store through September 2005. *Id.* (citing Trial Tr. 502). Mrs. R brought her youngest (then-three years old) son, AR, to work with her whenever DR's work schedule required her to do so. *Id.* (citing Trial Tr. 504, 619).

Around this time, Petitioner told a friend, Nancy Pickering, that

> he was very fond of a little boy named A. [Petitioner] explained that he knew A from where he worked and that he would buy gifts for the child. Petitioner also said that he loved A and wanted to be with him all the time. He

---

[1] The initials, rather than the names, of the owners are used to protect the identities of the children involved.

said he would marry the child if it were not impossible and that he could not wait for the child to be old enough to marry.

*Id.* at 4 (citing Trial Tr. 45-47, 49, 53).

Petitioner told another friend, John Metzner, about his relationship with A and another child, M. *Id.*

> Petitioner told Mr. Metzner that he met A at the store in Patchogue where he worked . . . . [Petitioner] said that he kissed A with passion and he eventually revealed to Mr. Metzner that he fondled the child's penis and also placed his penis against the child's penis. Still later, he said that he had often put his mouth on the child's penis and had, one time, put his finger in the child's anus.

*Id.* Metzner eventually called Child Protective Services. *Id.* at 5 (citing Trial Tr. 87-88).

When Petitioner met with police officers, he waived his *Miranda* rights. *Id.* at 6 (citing Trial Tr. 205-12, 597-99). "[Petitioner] admitted that he had oral sex with the child and that he had put his finger in the child's anus." *Id.* (citing Trial Tr. 212-16, 600-05). Petitioner was placed under arrest after which Petitioner again waived his *Miranda* rights and completed a written statement confessing the same. *Id.* at 6-7 (citing Trial Tr. 206, 212-22, 230-32, 607).

Petitioner waived his *Miranda* rights again and he wrote a second statement, wherein he admitted that he kissed another toddler, MMH, who was 1-1/2 years old, on the mouth. *Id.* at 7 (citing Trial Tr. 246-249, 250-51, 616). Petitioner denied accusations that he molested MMH. *Id.*

Petitioner was searched, whereby the detective found a diary and a photo album, both of which detailed the criminal activity. *Id.* at 8-9. Petitioner also admitted he had a picture of another child, AR; Petitioner used the picture as visual stimulation when he masturbated. *Id.* at 9 (citing Trial Tr. 305-306).

Petitioner was arraigned October 4-9, 2005. Pet'r's Aff. 2. Petitioner was charged with eight counts: counts 1 and 2, criminal sexual acts in the first degree; count 3, aggravated sexual abuse in the second degree; count 4, sexual abuse in the first degree; count 5, sexual abuse in the

first degree; counts 6 and 7, endangering the welfare of a child; and count 8, petit larceny. Pet'r's Aff. 2.

Petitioner pleaded not guilty and he was denied bail. *Id.* Prior to his indictment, Petitioner refused a five-year plea bargain offer; prior to trail, Petitioner refused a thirteen-year plea bargain offer. *Id.* Before trial, the trial court conducted a *Huntley* Hearing to "determine whether [Petitioner's] statements were knowingly and voluntarily made." *Id.* The trial court found Petitioner's statements were knowingly and voluntarily made and, after a trial, the jury convicted Petitioner of all charges. *Id.* The court sentenced Petitioner to serve a total of 50 years imprisonment. *Id.* At the trial, Petitioner's counsel called one witness, Petitioner's fellow employee at Second Findings. The witness testified that he never saw Petitioner act inappropriately with AR; he testified that he "did not think [Petitioner] had the opportunity to do the things was accused of doing." Resp't's Mem. L. 10 (citing Trial Tr. 752).

**B.     Claims**

The Petition presents three claims: (i) Petitioner was denied his Eighth and Fourteenth Amendment due process right to a fair trial, whereby Petitioner's prison sentence was excessive and harsh; (ii) Petitioner was denied his Sixth and Fourteenth Amendment due process right when the trial court erred in its "reasonable doubt" instruction to the jury; and (iii) Petitioner was denied his Sixth and Fourteenth Amendment due process right to effective assistance of counsel as to trial counsel's failure to call any expert witnesses.

## DISCUSSION

### A. Legal Standard for a Petition for a Writ of Habeas Corpus

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 131 S. Ct. 770, 780 (2011).

A State prisoner seeking Federal habeas review of his State conviction is required first to exhaust all remedies available to him in the State courts. *See* 28 U.S.C. § 2254(b)(1)(a). Exhaustion requires alerting the State courts to the Federal nature of the claim and raising the claim in the State's highest court. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999).

> If an application [for a Writ of Habeas Corpus] includes a claim that has been "adjudicated on the merits in State court proceedings," § 2254(d), an additional restriction applies. Under § 2254(d), that application "shall not be granted with respect to [such a] claim ... unless the adjudication of the claim": "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." "This is [] 'difficult to meet,' *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011), and [is a] "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

*Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *see also Jones v. Keane*, 329 F.3d 290, 294 (2d Cir. 2003) (federal court is barred from granting a habeas petition if the petitioner has not exhausted all available state remedies. "Exhaustion requires a petitioner fairly to present the federal claim in state court." Presentation means a petitioner "has informed the State court of both the factual and the legal premises of the claim he asserts in Federal court.").

In habeas corpus petition review, the Court presumes "the state court's factual findings are correct unless they are rebutted by clear and convincing evidence." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)).

The Court holds Petitioner's claims have been properly exhausted in State court. The Court will review the substantive merits of the Petition. *See, e.g., Cuadra v. Sullivan*, 837 F.2d 56, 58-59 (2d Cir. 1988) ("where the petitioners are *pro se,* the district court 'should review habeas petitions with a lenient eye, allowing borderline cases to proceed.' ").

## B. Excessive Prison Sentence

### i. Standard

"No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keene*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing *Underwood v. Kelly*, 692 F. Supp. 146 (E.D.N.Y. 1988)).

"Whether a sentence should run concurrently or consecutively is purely an issue of state law and is not cognizable on federal habeas review." *Johnson v. New York*, 851 F.Supp.2d 713, 722 (E.D.N.Y. 2012) (citing *Reyes v. New York*, No. 08 Civ. 8645, 2009 WL 1066938, at *2 (S.D.N.Y. Apr. 21, 2009)).

> The imposition of consecutive sentences under New York State law is governed by New York Penal Law § 70.25(2). Specifically, consecutive sentences are not permitted where "more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offense and also was a material element of the other." The New York Court of Appeals has interpreted "act or omission" to include the actus reus of the offense. *People v. Rosas*, 8 N.Y.2d 493, 496 (1997). "Actus reus is defined as '[t]he wrongful deed that comprises the physical components of a crime and that generally must be coupled with mens rea to establish criminal liability.' " *Id.* at 497 (quoting [BLACK'S LAW DICTIONARY] 39 (8th ed. 2004)).

*Seow v. Artuz*, 98-CV-72, 2007 WL 2890259, at *8 (E.D.N.Y. 2008); *see also People v. Gucla*, 794 N.Y.S.2d 126, 127 (N.Y. App. Div. 2007) ("Consecutive sentencing is permissible when the defendant's acts are distinguishable by culpable mental state, nature and manner of use, time, place and victim." (internal quotations omitted)).

"To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.' " *U.S. v. Goodwin*, 457 U.S. 368, 372 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). However, as the United States Supreme Court held in *Goodwin*, in reference to potential prosecutorial excess, " 'the Due Process Clause is not offended by all possibilities of increased punishment . . . but only by those that pose a realistic likelihood of vindictiveness.' " *Id.* at 384 (quoting *Blackledge v. Perry*, 417 U.S. 21, 26 (1974)).

"In *Bordenkircher*, the probability or certainty of leniency in return for a plea did not invalidate the mandatory penalty imposed after a jury trial. It should not do so here, where there was no assurance that a plea would be accepted if tendered, and, if it had been, no assurance that a sentence less than life would be imposed. Those matters rested ultimately in the discretion of the judge." *Corbitt v. New Jersey*, 439 U.S. 212, 221 (1978). In *Bordenkircher*, "[t]he Court noted that, by tolerating and encouraging the negotiation of pleas, this Court had accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his constitutional right to stand trial." *Goodwin*, 457 U.S. at 378 (citing *Bordenkircher*, 434 U.S. at 364-65) (noting *Bordenkircher* stood for "the Court's acceptance of plea negotiation as a legitimate process.").

### ii. Analysis

The Appellate Division held the trial court "properly imposed consecutive sentences upon the convictions of criminal sexual acts in the first degree . . . as each count involved a separate sexual act constituting a distinct offense." *People v. Dayton*, 887 N.Y.S.2d 184, 185-86 (N.Y. App. Div. 2009). The Court agrees with Respondent's contention: "[e]ach act of oral sexual conduct, sexual contact and sexual abuse is a separate offense that can be both separately charged and punished." Resp't's Mem. L. 19 (citing *People v. Smathers*, 683 N.Y.S.2d 680 (1998)). Moreover, this holding is in line with Federal case law (*see, e.g., Seow*, 2007 WL 2890259, at *8) and, thus, is not an unreasonable application of, clearly established Federal law. *See Cullen*, 131 S. Ct. at 1398. As the sentence imposed was within the prescribed range of State law (*see Keene*, 969 F.2d at 1383), outside of the vindictiveness issue, no constitutional issue is validly presented.

As to vindictiveness, as the Supreme Court held in *Corbitt*, the prosecutor's proposed leniency as to the plea bargain offers does not invalidate the sentencing court's decision. *See* 439 U.S. at 221. Further, as the Supreme Court held in *Goodwin*, "after initially expressing an interest in plea negotiation, respondent decided not to plead guilty and requested a trial by jury in District Court. In doing so, he forced the Government to bear the burdens and uncertainty of a trial." 457 U.S. at 283. The State's prosecutor cannot be expected—and is certainly not constitutionally-required—to suggest the same sentence after a trial as he or she would be during a plea bargain. Petitioner rejected the plea bargain. There is no evidence that the sentencing court toughened Petitioner's sentence because Petitioner did not accept a plea bargain. The Court, therefore, concludes that the Appellate Division's determination was neither contrary to, nor an unreasonable application of, clearly established Federal law. *See Cullen*, 131 S. Ct. at 1398.

## C. The Reasonable Doubt Instruction

### i. Legal Standard

"Expressions in many opinions of this Court indicate that it has long been assumed that proof of a criminal charge beyond a reasonable doubt is constitutionally required." *In re Winship*, 397 U.S. 358, 362 (1970). "[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364.

"To be cognizable on habeas, a challenge to a jury charge must show not only that it is erroneous, but that it violates a federal right." *Felder v. Goord*, 564 F.Supp.2d 201, 223 (S.D.N.Y. 2008) (citing *United States ex rel. Smith v. Montanye*, 505 F.2d 1355, 1359 (2d Cir. 1974)). "An erroneous state jury instruction is typically grounds for federal habeas relief only if it 'so infected the entire trial that the resulting conviction violates due process.' " *Id.* (quoting *Valtin v. Hollins*, 248 F.Supp.2d 311, 316 (S.D.N.Y. 2003)). Further, amending jury instructions may clarify and cure any initial defects. *See, e.g., Jean v. Greene*, 523 F. App'x 744, 748-49 (2d Cir. 2013); *see also DelValle v. Armstrong*, 306 F.3d 1197 (2d Cir. 2002).

### ii. Analysis

The trial court explained over five transcript pages the principle behind "guilt beyond a reasonable doubt". *See* Trial Tr. 876-880. Throughout this explanation, "[t]he trial court repeatedly emphasized throughout its jury instructions that [Petitioner] was entitled to a presumption of innocence and that the state bore the burden of proving each element of the crime beyond a reasonable doubt." *DelValle*, 306 F.3d at 1197. The [disputed] instruction . . . was located among a series of admonitions stating that the law affords every person a presumption of

8

innocence that can be overcome only by evidence proving guilt of the crimes charged beyond a reasonable doubt." *Id.*

The trial court notes "[a] reasonable doubt is an honest doubt of the defendant's guilt for which a reason exists based upon the nature and quality of the evidence." Trial Tr. 878. The trial court noted that this level of doubt "leaves a person [] firmly convinced of the defendant's guilt . . ." *Id.* This is a reasonable explanation of the reasonable doubt standard. The Court does not see any indication in the jury instructions that the trial court, as Petitioner argues, "erroneously implied that the jury must find an articulable reason to support its doubts about the People's case." Pet'r's Mem. L. 11. The Court, therefore, concludes that the Appellate Division's determination as to the jury instructions was neither contrary to, nor an unreasonable application of, clearly established Federal law. *See Cullen*, 131 S. Ct. at 1398.

### D. Ineffective Assistance of Counsel

#### i. Legal Standard

"[T]he proper standard for attorney performance is that of reasonably effective assistance[;] . . . the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688.

"Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest . . . . Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.*

"A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal citations omitted).

As to habeas review,

> [t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 131 S. Ct. at 785-86 (2010) (internal citations and quotations omitted; italics in original).

> The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case. The trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony. Neither may insist on the right to interrupt the opposing party's case, and obviously there is no absolute right to interrupt the deliberations of the jury to present newly discovered evidence. *The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence.*

*Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (emphasis added).

### iii. Analysis

For emphasis, this Court's job, under *Harrington*, is not to decide whether Petitioner's counsel met the *Strickland* standard; rather, it is to determine whether the State court's *Strickland* holding was reasonable. 131 S. Ct. at 785.

The Appellate Division reasonably held that Petitioner's trial counsel's "conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Dayton*, 887 N.Y.S.2d at 185 ("[t]he defendant received the effective assistance of counsel, under both the state constitutional standard and the federal constitutional standard."). Petitioner argues, however, that his counsel's failure to file a timely request for an expert witness fell below the standard.

As Respondent argues, the expert witness was going to testify as to whether "anal rugae" existed. "A witness was not needed for this because, as proven by what occurred when petitioner's attorney cross-examined the People's expert on this matter, the defense poked holes in the theory." Resp't's Mem. L. 26. Petitioner's counsel also "demonstrated the speculative nature of 'anal rugae.' " *Id.* The Court concurs with Respondent on this issue. If counsel had made a timely request for the expert witness, there is no evidence it would have changed the outcome of the trial, *i.e.*, there was no prejudice to Petitioner. The Appellate Division's holding on this issue was reasonable. The Court, therefore, concludes that the Appellate Division's determination was neither contrary to, nor an unreasonable application of, clearly established Federal law. *See Cullen*, 131 S. Ct. at 1398.

### E. Appealability

The Court shall not issue a certificate of appealability in this case as Petitioner has failed to make a "substantial showing of the denial of a constitutional right". 28 U.S.C. § 2253(c)(2); *see also, e.g., Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003).

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's Petition for a Writ of Habeas Corpus. The Court orders the Clerk of the Court to serve a copy of this Order upon the parties to this action.

**SO ORDERED.**

Dated: January 15, 2014
       Central Islip, New York

                                              Thomas C. Platt, U.S.D.J.