UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ALEX DAYTON,

                       Petitioner,

          -against                      **REPORT AND**
                                           **RECOMMENDATION**
                                         11 CV 1261 (DG) (CLP)

THOMAS LAVALLEY,

                       Respondent.
-------------------------------------------------------------X
POLLAK, Chief United States Magistrate Judge:

      On March 14, 2011, petitioner Alex Dayton ("Petitioner"), proceeding *pro se*, petitioned

this Court for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254, challenging a judgment of

conviction and sentence entered in County Court, Suffolk County (the "trial court"), for two

counts of criminal sexual act in the first degree, in violation of N.Y. Penal Law § 130.50; one

count of aggravated sexual abuse in the second degree, in violation of N.Y. Penal Law § 130.67;

one count of sexual abuse in the first degree, in violation of N.Y. Penal Law § 130.65; one count

of endangering the welfare of a child, in violation of N.Y. Penal Law § 260.10; and one count of

petit larceny, in violation of N.Y. Penal Law § 155.25.[1]

      On January 15, 2014, the Honorable Thomas C. Platt, United States District Judge, issued

a Memorandum and Order, denying the Petitioner's claims.  On appeal to the Second Circuit, the

Court of Appeals dismissed the appeal, finding that the lower court had failed to rule on all of the

claims asserted in the petition and thus, the Court of Appeals lacked jurisdiction to consider the

---

[1] Plaintiff was acquitted on one count of sexual abuse in the first degree, N.Y. Penal Law § 130.65, and one count of endangering the welfare of a child, N.Y. Penal Law § 260.10.

appeal.  The Court of Appeals remanded the petition to allow the district court to consider the following claims:

> 1) That petitioner's counsel failed to call an expert witness to testify about petitioner's mental illness and false confessions; 2) that the evidence was insufficient to support the conviction; 3) that petitioner's statements to the police should have been suppressed; 4) that the trial court erred in denying petitioner's motion to sever (framed as an ineffective assistance claim); 5) that petitioner's counsel should have objected to the jury charge; and 6) that the trial court erred in denying petitioner's request for a circumstantial evidence instruction to the jury.

(App. Order[2] at 2).

Having considered the parties' submissions on remand, the Court respectfully recommends that the remaining claims identified by the Second Circuit be denied as either procedurally barred and/or substantively without merit, such that none represent a procedure or decision that was contrary to, or an unreasonable application of, clearly established federal law.


FACTUAL BACKGROUND

The factual background of the case was set forth more fully in the Memorandum and Order of Judge Platt and only the salient facts relevant to the remaining claims in the petition will be addressed in detail herein.

For purposes of this Report and Recommendation, the evidence introduced at trial demonstrated that Ms. R owned a second-hand store in Patchogue, N.Y. and often brought her youngest son[3] "AR"[4] to work with her.  (Tr.[5] at 501, 504, 508-10).  Petitioner, a volunteer

---

[2] Citations to "App. Order" refer to the Order of the Second Circuit Court of Appeals, dismissing the Petition on November 19, 2014, Dkt No. 14-932.

[3] According to the testimony of Ms. R, AR or "A" was born in August 2002, so he was approximately three years old at the time Petitioner worked in the store from May to September 2005.

[4] The names of the children are identified only by initials to protect their identity.

[5] Citations to "Tr. at" refer to the transcript of the trial proceedings held from November 1 to November 16, 2006.

2

employee at the store, told a witness, Nancy Pickering, that he had become fond of a little boy named "A" who petitioner knew from where he worked. (Id. at 45-47, 53, 502). Among other inappropriate things, Petitioner told Ms. Pickering that he could not keep his hands off A. (Id. at 53).

Another witness, John Metzner, testified that Petitioner told him that he liked children, identifying A and "M," and, according to Metzner, Petitioner eventually began talking about A as one adult might describe a relationship with another adult. (Id. at 70-72). Metzner testified that according to Petitioner, he had met A at the store in Patchogue where Petitioner worked and that Petitioner had fondled the child's penis, put his mouth on the child's penis, and put his finger in the child's anus. (Id. at 75-77). Petitioner told Metzner that he engaged in these activities with A in a pup tent outside the store, and that he also cared for another boy, M, whom Petitioner kissed on the lips. (Id. at 77, 92). Although Metzner originally believed Petitioner was simply fantasizing about these boys, Petitioner told him that he could not stop. (Id. at 78, 80,107-108). After consulting a minister, who was also a police officer, Metzner reported what he knew to Child Protective Services ("CPS"). (Id. at 87-88).

CPS reported it to the police and on October 1, 2005, Detective Kevin Ibanez and a CPS worker went to speak to Ms. R at the store. (Id. at 191-192, 194-97). While there, the detective observed the pup tent described by Metzner. (Id. at 201). The detective asked Petitioner, who was present in the store, to go with him to the station house, where he interviewed Petitioner. (Id. at 202-03, 205).

At the precinct, Petitioner waived his Miranda rights (id. at 212-15, 605), and admitted having oral sex with A. (Id.) He was placed under arrest after approximately twenty-five minutes and then waived his Miranda rights a second time. (Id. at 206, 607). He then completed

a written statement based on questions asked by Detective Ibanez, in which he confessed to performing oral sex on A "about 15 to 20 times" inside the tent. (Id. at 230-32). After completing the written statement at about 6:30 p.m., Petitioner was given a snack and dinner and allowed to use the phone. (Id. at 237-45). During this time, the Crime Scene Unit collected the pup tent from the store. (Id. at 609-15). Given Petitioner's statements about another child, he was interviewed again and waived his Miranda rights for a third time. (Id. at 616). He then prepared a second written statement in which he admitted kissing MMH, a 1 ½ year old child, but denied molesting the child. (Id. at 246-49, 250-52, 254). MMH's mother and grandmother subsequently confirmed that Petitioner had kissed MMH on the mouth and described an incident in which Petitioner had his head in the child's groin area while the child was in a car seat. (Id. at 555-61).

Following the completion of the second written statement, petitioner was subjected to a search, during which Detective Ibanez recovered a diary[6] from Petitioner's front pocket containing references to Petitioner's sexual abuse of AR. (Id. at 274, Ex. 1). He also recovered a photo album[7] containing pictures of Petitioner with AR, including one of Petitioner kissing AR,[8] a flower identified as "from A," and a picture of MMH. (Id. at 262-69, Ex. 13). Following the discovery of this evidence, Petitioner was interviewed again, during which time Petitioner admitted having a naked picture of AR and using the picture as visual stimulation. (Id. at 305-06). The interview was reduced to writing as the last paragraph of Petitioner's first statement. (Id. at 304).

---

[6] People's Ex. One.
[7] People's Ex. Thirteen.
[8] The picture had the following written on it:  "A and Al forever." (Tr. at 268).

4

Petitioner was turned over to a detention attendant ("the Attendant") to be lodged for the night.  (Id. at 285-86).  Prior to placing Petitioner in a cell, the Attendant searched Petitioner and discovered additional photographs and negatives in Petitioner's shoe, including a number of photographs of AR.  (Id. at 289-92, 296, 314-16, 320-22, 483-89, Exs. 14-16, 17A-F, 18).  Petitioner allowed the police to search his rented room where the police discovered more photographs of AR, MMH, and other children and babies.  (Id. at 339-43, 346-51, 355-61, Exs. 27-29).  After Petitioner was arrested, the landlady cleaned out his room and found more photographs and a diary which she gave to the police.  (Id. at 160-165-66, 169-70, Exs. 1-3).  AR was physically examined and found to have evidence of trauma to his anus consistent with Petitioner's statement that he had penetrated AR with his finger.  (Id. at 653-55, 658-61).

Petitioner called one witness in his defense.  The witness, Mr. DiCarluccio, worked with Petitioner at the store and testified that AR was "most of the time" supervised by his mother and that he had never seen AR in the tent area without his mother, had never seen Petitioner act inappropriately with AR, and did not think Petitioner had the opportunity to do what he was accused of having done.  (Id. at 752).

Prior to trial, Petitioner was offered several plea bargains, including one for five years and one for 13 years, both of which he declined to accept.  (Mem. and Order[9] at 3).  The trial court held a Huntley[10] hearing to determine if Petitioner's statements to the police were "knowingly and voluntarily made."  (Id.)  The trial court found that they were, and the jury convicted Petitioner of six out of eight charges.[11]  Petitioner was sentenced to a total of 50 years imprisonment on all charges.  (Id.)

---

[9] Citations to "Mem. and Order" refer to the Memorandum and Order of the Honorable Thomas C. Platt, dated January 15, 2014.

[10] People v. Huntley, 15 N.Y.2d 72, 204 N.E.2d 179 (1965).

[11] Plaintiff was acquitted on charges relating to the alleged sexual abuse and child endangerment of MMH.

Following his trial and conviction, Petitioner filed an appeal with the Appellate Division, Second Department.  The Appellate Division held that the County Court properly denied Petitioner's motion to sever certain counts because the nature of the proof for each of the offenses was material and admissible with respect to the other counts.  People v. Dayton, 66 A.D.3d 797, 798, 887 N.Y.S.2d 184, 185 (2d Dep't 2009).  The court also held that "[v]iewing the evidence in the light most favorable to the prosecution, . . . we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt" and that the verdict was "not against the weight of the evidence."  Id.

The Appellate Division also reviewed Petitioner's claim that a portion of his confession should have been suppressed because his Miranda warnings were not administered immediately prior to his making that statement.  Id.  The court held that the claim was "without merit" and cited People v. Hasty, 25 A.D.3d 740, 741, 807 N.Y.S.2d 647 (2d Dep't 2006), in which the court held that "it is not necessary to repeat the warnings prior to subsequent questioning within a reasonable time thereafter, so long as the custody has remained continuous" and the person in custody has been issued Miranda warnings and knowingly and voluntarily waived his rights. People v. Dayton, 66 A.D.3d at 79, 887 N.Y.S.2d at 185-86.

The Appellate Division held that the County Court had not erred in denying the defendant's application for the appointment of experts, which was made on the eve of trial and 299 days after he entered a plea of not guilty to the indictment.  Id.  Noting that the decision rested in the trial court's discretion, the Appellate Division held that the trial court "providently exercised that discretion" given the "lateness of the application and the defendant's failure to offer any good cause for the delay."  Id.

---

See supra n.1.

Finally, the Appellate Division rejected Petitioner's claim of ineffective assistance of counsel and held that the sentence he received was not excessive.  Id.  With respect to Petitioner's remaining claims, the Appellate Division held that they were unpreserved for appellate review and without merit in any event.  Id.

On December 15, 2009, the New York State Court of Appeals issued a certificate denying Petitioner leave to appeal.  See People v. Dayton, 13 N.Y.3d 906, 895 N.Y.S. 2d 320 (2009).

DISCUSSION

I.  Standard of Review

A.  Timeliness of Petition

This *habeas* Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (codified as amended in scattered sections of the United States Code), which provides that a "1-year period of limitation shall apply to an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1).  This limitation, absent certain exceptions that do not apply to this case, runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  A conviction is deemed final for AEDPA purposes when the defendant's time to seek certiorari before the United States Supreme Court has expired.  See Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001).[12]  Moreover, any "time during which a properly filed

_____

[12] If the defendant files a petition with the United States Supreme Court, the conviction is final when certiorari proceedings have concluded.  Williams v. Artuz, 237 F.3d at 151. A petition for a writ of certiorari is timely when filed within 90 days after entry of judgment of a state court of last resort or a United States court of appeals.  Sup. Ct. R. 13.  Petitioner did not seek such relief.

application for State post-conviction or other collateral review . . . is pending" is excluded from the calculation of the statute of limitations period. 28 U.S.C. § 2244(d)(2).

Petitioner's direct appeal to the Appellate Division was denied on October 13, 2009, see People v. Dayton, 66 A.D.3d at 798, 887 N.Y.S.2d at 185-86, and petitioner's application for leave to appeal to the New York Court of Appeals was denied on December 15, 2009. See People v. Dayton, 13 N.Y.3d at 906, 895 N.Y.S.2d at 320. Under Rule 13 of the Rules of the Supreme Court of the United States, petitioner's conviction became final on March 15, 2010, 90 days after petitioner's motion for leave to appeal to the Court of Appeals was denied.

Thus, the statute of limitations applicable to petitioner's *habeas* Petition would have expired on March 15, 2011, one year after the period for petitioner to seek Supreme Court review expired. Since Petitioner filed his *habeas* Petition on March 14, 2011, his Petition was timely filed before this Court.

B. AEDPA Standards

Under 28 U.S.C. § 2254, as amended by AEDPA, the authority of federal courts to grant writs of *habeas corpus* on the merits of claims filed by state prisoners is limited to instances in which it can be shown that the adjudication of a claim on the merits in state court: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In Williams v. Taylor, the Supreme Court indicated that the "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have independent meanings. 529 U.S. 362, 404-05 (2000). Under the first prong, a state court decision is considered to be "contrary

to" clearly established federal law where the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or where the state court "confronts a set of facts that are materially indistinguishable" from those considered by the Supreme Court, but "nevertheless arrives at a result different from [Supreme Court] precedent." Id. at 405-06; accord Evans v. Fischer, 712 F.3d 125, 132-33 (2d Cir. 2013); King v. Greiner, 453 F. App'x 88, 89 (2d Cir. 2011). The precedent providing guidance in this analysis are "'holdings, as opposed to . . . dicta'" of the Supreme Court's decisions at the time of the state court decision. Contreras v. Artus, 778 F.3d 97, 110 (2d Cir. 2015) (quoting Williams v. Taylor, 529 U.S. at 412).

Under the "unreasonable application" prong of Section 2254(d)(1), a state court decision will be set aside if it involves an "unreasonable application" of the correct governing legal rule to the particular facts of the case, see Williams v. Taylor, 529 U.S. at 407, 409; King v. Greiner, 453 F. App'x at 89; Evans v. Fischer, 712 F.3d at 133, or if the decision "refuses to extend a legal principle that the Supreme Court has clearly established to a new situation in which it should govern." Emmons v. Artus, 494 F. App'x 127, 128 (2d Cir. 2012) (quoting Hoi Man Yung v. Walker, 468 F.3d 169, 176 (2d Cir. 2006)). In conducting this analysis, the appropriate inquiry is whether the decision was objectively unreasonable, not merely whether it was incorrect or erroneous. Williams v. Taylor, 529 U.S. at 409-11.

The Supreme Court has made it clear that review under Section 2254(d) is extremely narrow. The Court has stated that *habeas corpus* is "'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" Woods v. Donald, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) (quoting Harrington v. Richter, 562 U.S. 86, 102-03 (2011)). A *habeas* court must first determine the theories that formed the basis of the state court's decision, then ask whether "fairminded jurists could

disagree" that those theories were inconsistent with a prior Supreme Court decision.  Harrington v. Richter, 562 U.S. at 101.  A *habeas* petitioner must show that the state court's ruling was "so lacking in justification" that there was an error in existing law that is "beyond any possibility for fair-minded disagreement."  Id. at 103.  This standard is intentionally difficult to meet.  Id. at 102.

Under AEDPA, a state court's determination of a factual issue is "presumed to be correct," 28 U.S.C. § 2254(e)(1); Sarcina v. Artus, 452 F. App'x 44, 46 (2d Cir. 2011), and the petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Moreover, "a decision adjudicated on the merits in a state court and based on a *factual* determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(d)(2)) (emphasis added).

II.  Exhaustion of Petitioner's Claims

Before considering the merits of each of petitioner's claims, this Court must first determine if petitioner has exhausted all available state remedies and whether federal *habeas* review is permissible.

A federal court may not grant a petition for a writ of *habeas corpus* unless a petitioner has exhausted all available state court remedies.  See 28 U.S.C. § 2254(b)(1)(A); Picard v. Connor, 404 U.S. 270, 275-76 (1971); Richardson v. Superintendent of Mid-Orange Corr. Facility, 621 F.3d 196, 201 (2d Cir. 2010); Galdamez v. Keane, 394 F.3d 68, 71-72 (2d Cir. 2005); Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001); Vittor v. New York State Dep't of Corr. and Cmty. Supervision, No. 13 CV 3112, 2014 WL 1922835, at *3 (E.D.N.Y. May 14,

2014).  "To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.'"  Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994) (quoting Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990)), cert. denied, 115 S. Ct. 1436 (1995)).  "'In order to have fairly presented his federal claim to the state courts[,] the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'"  Rush v. Lempke, 500 F. App'x 12, 14 (2d Cir. 2012) (quoting Daye v. Attorney Gen. of State of New York, 696 F.2d 186, 191 (2d Cir. 1982) (en banc)).  "The burden of proving exhaustion lies with the petitioner."  Moore v. Attorney Gen. of N.Y., No. 17 CV 0474, 2019 WL 3717580, at *6 (E.D.N.Y. Aug. 7, 2019) (quoting Cartagena v. Corcoran, No. 04 CV 4329, 2009 WL 1406914, at *3 (E.D.N.Y. May 19, 2002)), appeal dismissed, No. 19-2618, 2020 WL 768668 (2d Cir. Jan. 15, 2020).

In the past, a state prisoner's federal *habeas* petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims.  Rose v. Lundy, 455 U.S. 509, 522 (1989).  As the Court in Coleman v. Thompson explained:  "This exhaustion requirement is . . . grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights."  501 U.S. 722, 731 (1991).  Under AEDPA, a district court, in its discretion, may deny a *habeas* petition on the merits when the petition contains unexhausted claims.  See 28 U.S.C. § 2254(b)(2) (providing:  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state").  Courts in this Circuit generally exercise their discretion to reach the merits where an unexhausted claim is "patently frivolous."  See Johnson v. Colvin, No. 15 CV 5466, 2018 WL 6250510, at *6 (E.D.N.Y. Nov. 29, 2018) (quoting Warren v. Goord, No. 06 CV 1423, 2013 WL

1310465, at *11 (E.D.N.Y. Mar. 28, 2013)); see also Naranjo v. Filion, No. 02 CV 5549, 2003

WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003) (collecting cases).

In his Memorandum and Order dated January 15, 2014, Judge Platt considered

Petitioner's claims that:  1) the sentence was excessive (Mem. and Order at 5-7); 2) the claim

that the trial court erred in its jury instruction on reasonable doubt (see id. at 8-9); and 3)

Petitioner's claim that counsel was ineffective because counsel failed to file a timely request for

an expert witness.  (Id. at 9-11).  In his Memorandum and Order, Judge Platt found that

"Petitioner's claims have been properly exhausted in State court."  (Id. at 5).

In the Mandate of the Second Circuit returning the Petition to this Court for further

consideration, the Court of Appeals identified six additional implied claims (the "Implied

Claims") beyond the three explicit claims addressed by Judge Platt.[13]

A.  First Implied Claim: Ineffective Assistance of Counsel Relating to Experts' Appointment

The record below is clear that Petitioner raised the claim of ineffective assistance of

counsel in the context of his argument relating to the failure to call expert witnesses on his

mental illness and on false confessions.  (Pet'r App. Br.[14] at 34) (stating "[s]hould [the Appellate

Division] choose to affirm the trial court's decision [denying the appointment of experts],

[Petitioner] respectfully contends that defense counsel was ineffective in failing to file these

motions in a timely manner").  Petitioner also raised this claim before the Court of Appeals in his

application for leave to appeal, arguing that "the denial of an expert" and the "deni[al] [of] the

---

[13] In a letter dated April 30, 2021, Respondent disagrees with the Second Circuit's conclusion that these additional Implied Claims can be inferred from Petitioner's briefing and argues that any discussion of these issues should be read to support the three claims considered by Judge Platt, rather than as separate independent claims. (Resp.' 4/30/21 Ltr. at 5 (ECF No. 24).  It is clear that the district court "must follow the mandate issued by an appellate court." Havlish v. 650 Fifth Avenue, 934 F.3d 174, 181 (2d Cir. 2019) (quoting Puricelli v. Republic of Argentina, 797 F.3d 213, 218 (2d Cir. 2015)).  The Circuit's Mandate is clear that this Court should consider the six enumerated Implied Claims as separate claims.  Accordingly, this Court has proceeded to address each claim.

[14] Citations to "Pet'r App. Br." refer to Petitioner's Brief to the Appellate Division, Second Department, dated November 11, 2008, ECF No. 7-2.

effective assistance of counsel" constituted grounds for reversal.  (Pet'r Ct. App. Br.[15] at 2).

Thus, this claim has been exhausted.

   B.   Second Implied Claim: Sufficiency of the Evidence

        Petitioner also exhausted his second Implied Claim concerning the sufficiency of the

evidence.  Before the Appellate Division, he argued "that the trial court erred in denying defense

counsel's motions," for a trial order of dismissal, which petitioner explained concerned whether

"the trial evidence was legally insufficient to establish the offenses charged."  (Pet'r App. Br. at

10).  Petitioner also asked the Court of Appeals to review his claim "that the evidence was

legally insufficient."  (Pet'r Ct. App. Br. at 2).  As with his first Implied Claim, petitioner

properly invoked one complete round of New York's appellate review process, presenting this

claim to both the Appellate Division and the Court of Appeals.  The second Implied Claim is

exhausted.

   C.   Third Implied Claim: Suppression of Evidence

        Petitioner also explicitly argued in his direct appeal to the Appellate Division that his

statements to the police should have been suppressed; this Implied Claim is therefore exhausted.

(Pet'r App. Br. at 2, 10).  Petitioner reiterated to the Court of Appeals that "the [Appellate

Division] erred in ruling that the Miranda ruling was proper."  (Pet'r Ct. App. Br. at 2).  Having

presented this claim to both levels of New York appellate review, this claim is exhausted.

   D.   Fourth Implied Claim: Ineffective Assistance of Counsel Relating to Severance

        While Petitioner's brief on appeal directly addressed the argument that the trial court

erred in denying his motion to sever (Pet'r App. Br. at 8-9), he did not directly raise the claim

---

[15] Citations to "Pet'r Ct. App. Br." refer to Petitioner's Brief to the New York Court of Appeals, dated October 28, 2009, ECF No. 7-5.

that counsel was ineffective in "allowing" the trial court to deny the severance motion. (Pet'r Mem.[16] at 17). Petitioner's brief before the Court of Appeals merely argued that petitioner "was denied the effective assistance of counsel" without specifying which of trial counsel's purported errors amounted to ineffective assistance. (Pet'r Ct. App. Br. at 2).

Where a petitioner's claim of ineffective assistance of counsel alleges more deficiencies than were raised before the state court, the petition must be dismissed as unexhausted. Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991); Persaud v. Connelly, No. 14 CV 7087, 2020 WL 3470250, at *2-3 (E.D.N.Y. June 25, 2020). Where an additional factual claim in support of the ineffective assistance of counsel allegation merely "supplements" the ineffectiveness claim and does not "fundamentally alter" it, dismissal is not required. Caballero v. Keane, 42 F.3d 738, 741 (2d Cir. 1994). However, because an ineffective assistance claim may "hinge on any one allegation or the cumulative effect of all the allegations," deficiencies identified for the first time in a *habeas* petition are often deemed to fundamentally alter the underlying claim for ineffective assistance. See Sanford v. Senkowski, 791 F. Supp. 66, 68-69 (E.D.N.Y. 1992) (holding that petitioner failed to exhaust two claims for ineffective assistance of counsel asserted in his *habeas* petition where four other ineffectiveness claims were presented to the state court on appeal); see also Warren v. Goord, 2013 WL 1310465, at *18-19 (finding claim that attorney refused to let petitioner testify "different in character" from claim raised on appeal that attorney failed to obtain Rosario material, and therefore new allegation was unexhausted); Lebron v. Girdich, No. 03 CV 2765, 2003 WL 22888809 at *4, n. 8 (S.D.N.Y. Dec. 5, 2003) (holding, "[f]or a claim of ineffective assistance to be deemed exhausted, a petitioner must have presented to the state court *all* factual allegations on which that claim is

---

[16] Citations to "Pet'r Mem." refer to Petitioner's Affirmation & Memorandum of Law in Support of Petition for a Writ of *Habeas Corpus* Pursuant to 28 U.S.C. § 2254, dated March 9, 2011, ECF No. 1-2.

based" (emphasis in original)).Since Petitioner did not explicitly raise his fourth Implied Claim before the state courts, he has not met his burden to demonstrate exhaustion. However, for the reasons discussed infra, because the claim is patently frivolous, it is respectfully recommended that the court exercise its discretion to reach the merits of the claim without requiring exhaustion. See 28 U.S.C. § 2254(b)(2); see also Johnson v. Colvin, 2018 WL 6250510, at *6 (quoting Warren v. Goord, 2013 WL 1310465, at *11).

E. Fifth[17] Implied Claim: Erroneous Denial of Circumstantial Evidence Jury Charge

Petitioner raises the claim that in addition to the error allegedly committed by the trial court in its reasonable doubt instruction – a claim addressed by Judge Platt in his Memorandum and Order – the trial court erred in its charge to the jury on circumstantial evidence. (Pet'r Mem. at 19). Specifically, petitioner notes that his counsel objected to a circumstantial evidence charge during the charge conference, but he never made a motion for a new trial. (Id.) Petitioner argues that since the jury was "given a choice to find petitioner guilty by direct or circumstantial evidence," the trial court committed a fundamental error in not instructing the jury as requested by Petitioner. (Id.)

This claim was raised by Petitioner on his direct appeal to the Appellate Division and, although not specifically discussed in any detail in his Memorandum of Law, was among the "remaining contentions" that the Appellate Division denied as unpreserved for appellate review and, "in any event" as without merit. People v. Dayton, 66 A.D.3d at 798, 887 N.Y.S.2d at 186. The claim is thus procedurally barred, and in any event, is patently frivolous, as discussed infra.

---

[17] Although this Implied Claim, asserting error in the trial court's jury charge on circumstantial evidence, is mentioned last in the Circuit's remand Order, the Court has addressed it first before addressing the final issue of whether counsel was ineffective in objecting to the jury charge.

F.  Sixth Implied Claim: Ineffective Assistance of Counsel Relating to Jury Charge

     Petitioner raised the argument that the trial court erred in denying his motion for a circumstantial jury instruction in his brief on appeal to the Appellate Division.  (Pet'r App. Br. at 16, discussed infra).  However, he did not explicitly argue that counsel was ineffective in not objecting to the charge.  He also argued that the trial court erred in its reasonable doubt instruction (Pet'r App. Br. at 16-21), a claim that Judge Platt reviewed in his Memorandum and Order (Mem. and Order at 8-9).  Again, petitioner did not raise the argument that counsel was ineffective in failing to object to the reasonable doubt charge in his brief before the Appellate Division.  This claim is therefore unexhausted.  However, for the reasons set forth below, Petitioner's claim of ineffective assistance of counsel with respect to the jury charge is  patently frivolous, as discussed further infra.  Thus, it is respectfully recommended that the court reach the merits of the claim without requiring exhaustion.  See 28 U.S.C. § 2254(b)(2).

     Having determined that all of Petitioner's implied claims are either exhausted or patently frivolous, the Court now proceeds to address the merits of each of the Implied Claims.

III.  Petitioner's Claims

     In his Memorandum and Order dated January 15, 2014, Judge Platt reviewed the three explicit claims in the Petition and denied the Petition, finding that the State Court's determination on all three grounds was neither contrary to, nor an unreasonable application of clearly established law.  (Mem. and Order at 5).  The Court now addresses the merits of the six Implied Claims.

A.  First Implied Claim - Failure to Call Expert Witnesses

     In reviewing Petitioner's claims on appeal from Judge Platt's Memorandum and Order, the Second Circuit noted that the district court did not rule on Petitioner's claim of ineffective assistance of counsel based on his argument  that "his counsel failed to call an expert to testify

about false confessions and [Petitioner's] mental illness." (App. Order at 2; Pet'r Mem. at 15-16). The district court did review Petitioner's claim that counsel was ineffective for failing to timely request an expert witness to testify about "anal rugae," agreeing with the conclusion of the Appellate Division that even if counsel had timely requested an expert witness on this issue, there was no evidence that it would have changed the outcome of the trial and therefore, there was no prejudice to the Petitioner. (Mem. and Order at 11).

Since Petitioner also raised the argument that trial counsel was ineffective for failing to file a motion for the appointment of an expert in the field of psychology to testify about coerced and false confessions and for the appointment of a neuropsychologist, and since this claim was exhausted in the state courts but not addressed by the district court (see infra at 12-13), this Court now analyzes the merits of this first Implied Claim.

     1)  Strickland Standard

Claims of ineffective assistance of counsel are governed by the two-pronged test set out in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, legal representation violates the Sixth Amendment if it: 1) falls "below an objective standard of reasonableness;" and 2) if the defendant suffers prejudice as a result. Id. at 687-88. "It is the accused's 'heavy burden' to demonstrate a constitutional violation under Strickland." Moreno v. Smith, No. 06 CV 4602, 2010 WL 2975762, at *15 (E.D.N.Y. Jul. 26, 2010) (quoting United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004)).

In analyzing the first prong of the test, Strickland requires that "[j]udicial scrutiny of counsel's performance must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged

action might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689 (internal quotation marks and citations omitted). In order to show the prejudice required under the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The Court defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." Id. at 694. The Court further instructed that in determining whether the specified errors resulted in prejudice, "a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." Id. at 694. It is clear that "Strickland does not guarantee perfect representation, only a 'reasonably competent attorney.'" Harrington v. Richter, 562 U.S. at 110 (quoting Strickland v. Washington, 466 U.S. at 687).

2) Petitioner's Request for Experts

While it is clear that the Constitution guarantees defendants the right to present witnesses in their defense, that right is subject to the rules of procedure that ensure a fair and orderly trial. Taylor v. Illinois, 484 U.S. 400, 410 (1988). Under New York law, psychiatric evidence is not admissible at trial "unless the defendant serves upon the People and files with the Court a written notice of his intention to present psychiatric evidence." Crim. Pro. L. § 250.10(2). Notice must be served and filed no more than 30 days after the entry of a not guilty plea to the indictment. Id. The notice requirement is "designed to allow the People an opportunity to obtain *any* mental health evidence . . . necessary to refute a defense of mental infirmity." People v. Berk, 88 N.Y.2d 257, 265, 667 N.E.2d 308, 312, 644 N.Y.S.2d 658, 662 (1996), cert. denied, 519 U.S. 859 (1996) (emphasis in original). Trial courts may allow defendants to serve late notice of intent if it is in the "interest of justice and for good cause shown." Id.

In this case, Petitioner made the request immediately before the start of jury selection, asking the trial court to appoint three experts: a psychiatric expert on false confessions, a medical expert on rectal exams, and a neuropsychologist. (Tr. at 3). In denying the request, the trial court noted that it was untimely because it was made 299 days after defendant was arraigned on the indictment, and there was no reason given for the late application. (Id. at 4). Moreover, the trial court noted that it had granted a previous application for a psychiatrist/psychologist. (Id.) Citing People v. Berk, the trial court found that it was not obliged to facilitate changing defense strategies and theories. (Id.)

On appeal, the Appellate Division reviewed the claim that the trial court had erred in denying the application, noting that the denial rested in the court's discretion and finding that "the court providently exercised its discretion," "given the lateness of the application and the defendant's failure to offer any good cause for the delay." People v. Dayton, 66 A.D.3d at 798, 887 N.Y.S.2d at 185.

In his brief before the Appellate Division, Petitioner argued that defense counsel failed to render effective assistance in failing to file the motion for appointment of experts in a timely fashion. (Pet'r App. Br. at 34). In addition to ruling that the trial court did not err in denying the late request for an expert, the Appellate Division also denied the claim of ineffective assistance of counsel. Citing Strickland, the court held that: "The defendant received the effective assistance of counsel, under both the state constitutional standard . . . and the federal constitutional standard." 66 A.D.3d at 798, 887 N.Y.S.2d at 185.

Strategic choices made by counsel after a thorough investigation of the law and facts are "virtually unchallengeable." Strickland, 466 U.S. at 690-91. Under Strickland, counsel has a professional duty to "make reasonable investigations or to make a reasonable decision that

19

makes particular investigations unnecessary." Id. at 691.  In Pavel v. Hollins, the Second Circuit held that defense counsel in a child abuse case rendered ineffective assistance of counsel where his failure to call a medical expert was based on an insufficient investigation.  261 F.3d 210, 223 (2d Cir. 2001); see also Lindstadt v. Keane, 239 F.3d 191, 201 (2d Cir. 2001).  In this case, there has been no suggestion that counsel failed to undertake a thorough investigation before making his last-minute request for the appointment of these experts.  Indeed, counsel had previously made a request for the appointment of a psychologist, which had been granted by the trial court.[18]  In the absence of any specific explanation as to why a neuropsychologist would also be necessary, the Appellate Division's determination that the trial court's decision not to appoint this additional expert at the last minute was neither an abuse of discretion, nor an unreasonable application of the governing state procedural law, nor was it contrary to clearly established federal law.

Similarly, under New York law, the admission of expert testimony regarding false confessions is within the court's discretion.  See People v. Herrnkind, 49 A.D.3d 555, 851 N.Y.S.2d 886 (2d Dep't 2008).  Again, the record demonstrates that the trial court considered the requests, the import of the expert's testimony, and determined based on the late notice and the delay of the trial not to exercise its discretion to allow such a late request.  No explanation was given as to the reason for the last-minute request and the Appellate Division found that the trial court's decision to deny the late request was not unreasonable.  People v. Dayton, 66 A.3d at 798, 887 N.Y.S.2d at 185.  The Appellate Division's determination was neither an unreasonable application of the governing law nor was it contrary to clearly established federal law.

---

[18] Tellingly, a decision was made not to call a psychologist to testify at trial.

20

The Appellate Division also rejected the argument that counsel was ineffective.  A review of the record in its entirety shows that counsel had researched the law, filed motions, presented a defense, and thoroughly cross-examined the State's witnesses.  Counsel's request early on for the appointment of a psychologist shows his awareness of the potential impact of psychological evidence, and his late attempt to request these additional experts does not demonstrate ineffectiveness, but rather demonstrates an effort on his part to strive to find a viable argument with which to defend his client.  Given that a decision was made not to call the psychological expert who had been approved by the trial court, it appears that the trial court properly determined that this last-minute request was one of strategy.  Moreover, it is not evidence of a deficient performance, because even if the relief had been granted, it would not have altered the outcome given the strength of the evidence presented.

Furthermore, the question before this Court is whether, under AEDPA, the state court's application of the Strickland standard was unreasonable.  Harrington v. Richter, 131 S. Ct. at 785-86 (2010).  "This is different from asking whether defense counsel's performance fell below Strickland's standard."  Id. at 785.  As the Court in Harrington explained, under Section 2254(d)(1), the question of whether there has been an "unreasonable" application of federal law is different from an "incorrect" application of federal law.  Id.  The state court must be given "deference and latitude," id., and the State's "interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence."  Taylor v. Illinois, 484 U.S. 400, 411 (1988).

Under the circumstances, it is respectfully recommended that the Appellate Division's determination that the Petitioner was not denied the effective assistance of counsel as failing to

request these expert witnesses was neither contrary to nor an unreasonable application of clearly established Federal law.

### B. Second Implied Claim - Sufficiency of the Evidence

In the "Other Remedies" paragraph of the Petition dealing with the challenge to the reasonable doubt instruction, Petitioner raised the claim that the evidence presented at trial was insufficient to establish his guilt beyond a reasonable doubt. (Pet'n[19] at 4). Although Petitioner did not address this claim in detail in his Memorandum of Law in support of his Petition, he argued that the trial court erred in denying his motion to dismiss on the grounds that the evidence was legally insufficient to establish the charged offenses. (Pet'r Mem. at 11-12). The Second Circuit identified this as an issue that had not been addressed in the district court's initial ruling on the Petition. (App. Order at 2).

Petitioner raised this issue on direct appeal to the Appellate Division which held: "Viewing the evidence in the light most favorable to the prosecution . . . we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt," and that the verdict of guilt "was not against the weight of the evidence." People v. Dayton, 66 A.D.3d at 797-98, 887 N.Y.S.2d at 185.

When reviewing an insufficiency of evidence claim, the Court must view the evidence in the light most favorable to the prosecution, and must use a standard that will determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis omitted).

---

[19]Citations to "Pet'n" refer to the Petition for Habeas Corpus filed by Petitioner on March 14, 2011, ECF No. 1.

Based on a review of the trial transcript and the evidence presented, the State presented overwhelming evidence of Petitioner's guilt.  In addition to Petitioner's own confessions, and written statements as to his conduct with respect to the children, the State presented a number of corroborating witnesses:  Mr. Metzner, who reported the abuse to CPS and to whom Petitioner also confessed about his abusive conduct; Ms. Pickering, who cared for Petitioner's stepbrother and who testified about his relationship with A; and MMH's mother and grandmother, who testified about an incident with Petitioner in the car with MMH.  Apart from the testimonial evidence, the State presented photographs taken from Petitioner's person and from his home, his diary, which contained references to his abuse of AR, and physical evidence of abuse to AR.  In light of the totality of the evidence presented by the State, no rational trier of fact would have found that the State had failed to establish the essential elements of the charges beyond a reasonable doubt.

Accordingly, the Court respectfully recommends a finding that the Appellate Division's determination regarding the sufficiency of the evidence be found neither contrary to nor unreasonable application of clearly established Federal law.

C. Third Implied Claim – Suppression

Petitioner contends that although he was read his Miranda rights when Detective Ibanez initially began questioning him in the precinct, his statements were coerced and the time period between the initial Miranda warnings and his subsequent admissions required fresh Miranda warnings.  (Pet'r Mem. at 20)  Petitioner argues that he "is a mentally ill person," and the "investigative officer used undue influence to get the petitioner to waive his rights and make a statement, which produced "a confession that was not a product of free will."  (Id. at 23).

It is well established that when a person is taken into custody and subjected to questioning by law enforcement officers, he must be "warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."  Miranda v. Arizona, 384 U.S. 436, 444 (1966); see also Dickerson v. United States, 530 U.S. 428 (2000).  In Thompson v. Keohane, 516 U.S. 99, 112 (1999), the Court held that "[t]wo discrete inquiries are essential to the determination" of whether a defendant has been taken into custody for Miranda purposes: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave."  While "the ultimate question" of whether the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a "matter for independent federal determination," Miller v. Fenton, 474 U.S. 104, 112 (1985); see also Whitaker v. Meachum, 123 F.3d 714, 716 (2d Cir. 1997), a state court's determination of the factual circumstances surrounding the interrogation, such as the length of the interrogation, and the defendant's familiarity with Miranda warnings and his prior experience with the legal process, are questions of fact, which are entitled to a presumption of correctness under 28 U.S.C. § 2254(d).  See Miller v. Fenton, 474 U.S. at 112.

In this case, the trial court held a Huntley hearing, see People v. Huntley, 15 N.Y.2d 72, 204 N.E.2d 179 (1965), to determine whether Petitioner's statements about removing AR's urine from the potty, which were made in between two Mirandized statements, were knowingly and voluntarily made.  (Resp. Br.[20] at 3).  Petitioner argued that the statements were involuntary because he was not specifically advised of his Miranda rights immediately before making the

---

[20] Citations to "Resp. Br." refer to the Respondent's Brief on appeal before the Appellate Division, Second Department, dated March 26, 2009, ECF No. 7-3.

statements, and that the time period between being <u>Mirandized</u> and Petitioner's statements
required fresh warnings. (<u>Id.</u> (citing 10/23/2006 H. Tr.[21] at 57-59)). He also argued that the
police overcame his will because they knew he had a low I.Q. (<u>Id.</u>)[22]

   During the <u>Huntley</u> hearing, Detective Ibanez testified that after receiving information
from CPS relating to possible child abuse at the store, he asked Petitioner to accompany him to
the precinct, which Petitioner agreed to do without asking any questions and without being
handcuffed. (10/23/2006 H. Tr. at 17-19, 114-16). The detective read Petitioner his <u>Miranda</u>
rights after which Petitioner began admitting his relationship with AR. (<u>Id.</u> at 20, 44-50, 146-
47). He was then advised of his <u>Miranda</u> rights a second time, waived those rights, and provided
a written statement to the police. (<u>Id.</u> at 49-50, 146-47). Petitioner was then given dinner, an
opportunity to place multiple phone calls and left in the interview room unrestrained and at times
without supervision. (<u>Id.</u> at 59-60, 144, 146, 149). Following this break, Petitioner was given
his <u>Miranda</u> warnings for the third time and re-interviewed, during which he admitted sexual
abuse of not only AR but another child while in his play pen. (<u>Id.</u> at 56, 58-59, 66, 147).
According to the testimony, Petitioner was then lodged in a cell overnight and in the morning, he
was questioned again. (<u>Id.</u> at 136).

   Although the detectives did not read the warnings or obtain a signed waiver again the
next morning, they reminded Petitioner of his rights: "You don't have to talk to me, like last
night when I read you your rights." (<u>Id.</u> at 136-37). According to the testimony, the Petitioner
seemed coherent and understood what they were saying to him; thereafter, at 12:30 in the

---

[21] Citations to "10/23/2006 H. Tr." refer to the transcript of the <u>Huntley</u> hearing held on October 23, 2006.
The hearing continued on November 1, 2006.
[22] From the record below, it appears that Petitioner also raised an issue relating to the scope of the search
conducted of his rented room based on a claim that he was incapable of consenting and was coerced into signing the
consent form. This issue has not been raised in the instant <u>habeas</u> petition.

afternoon, he consented to a search of his room.  (Id. at 152).  During the course of this search, detectives discovered a jar labeled AR's urine which Petitioner admitted to retrieving and saving. (Id. at 75-77).

In reviewing the trial court's denial of the motion to suppress, the Appellate Division found that Petitioner's claim was "without merit."  People v. Dayton, 66 A.D.3d at 798, 887 N.Y.S.2d at 185.  Citing People v. Hasty, 25 A.D.3d 740, 741 (2006), the court found that "the evidence adduced at the Huntley hearing . . . demonstrated that the [Petitioner] waived his Miranda rights on three occasions prior to making the statement in question within a reasonable time thereafter, and that he was continuously in police custody."  Id.  The Appellate Division's finding was a factual determination that carries with it the presumption of correctness under 28 U.S.C. § 2254(d).  See Miller v. Fenton, 474 U.S. at 112.  Nothing raised in the Petition or in the Court's review of the record suggest that the challenged confession was obtained in a manner not compatible with the requirements of the Constitution.

Accordingly, it is respectfully recommended that the court deny Petitioner's claim of error relating to the trial court's decision on suppression and find that the Appellate Division's determination was neither contrary to, nor an unreasonable application of, clearly established Federal law.

### D. Fourth Implied Claim - The Severance Motion

Petitioner contends that the trial court erred[23] in denying the motion to sever Counts 5, 7, and 8 from the remaining charges in the indictment because these counts involved separate

---

[23] Although Petitioner labels this claim as "Petitioner's trial Court's Counsel's performance was deficient for allowing Trial Court to Err in denying defendant's Severance Motion," the substance of the claim addressed in the Petitioner's Memorandum of Law addresses only the question of whether the trial court erred in declining the motion to sever and does not discuss counsel's performance at all.  Even if the Court were to consider the claim as raising a question of counsel's effectiveness, as framed, it is clear from the transcript that counsel repeatedly requested a severance which was considered and denied by the trial court.  (Jury Selection Transcript ("J. Tr.") at 11-12; Tr. at

victims and the incidents allegedly occurred almost a year apart.  (Pet'r Mem. at 17-18).  On

appeal, the Appellate Division found that the trial court "properly denied the defendant's motion

to sever certain counts in the indictment, since the nature of the proof for each of the offenses

was material and admissible as evidence upon the trial of the other counts in the indictment."

People v. Dayton, 66 A.D.3d at 797, 887 N.Y.S.2d at 185.  The court further found that "[s]ince

the offenses were properly joined in one indictment from the outset, the court lacked the

statutory authority to sever them."  Id.

Joinder rules are matters of state law generally not cognizable under federal *habeas*

review unless the error rises to the level of a constitutional violation, in which case *habeas* relief

may be granted but only if it had a "'substantial and injurious effect or influence in determining

the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (citation omitted).  Under

New York law, two offenses may be joined for trial when "[t]hey are based upon the same act or

upon the same criminal transaction [or]  . . . [e]ven though based upon different criminal

transactions . . . such offenses are defined by the same or similar statutory provisions and

consequently are the same or similar in law."  N.Y. Crim. Pro. Law § 200.20(2).  The decision

whether to sever is left to the "sound discretion" of the trial court.  People v. Cabrera, 188 A.D.2d

1062, 1063, 592 N.Y.S.2d 171 (1992).  A defendant seeking severance must make a clear and

convincing showing of prejudice to warrant severance.  People v. Shapiro, 50 N.Y.2d 747, 757,

409 N.E.2d 897 (1980); People v. Dodge, 72 Misc. 2d 345, 348 (N.Y. Cty 1972).

In this case, the trial court determined that joinder was proper pursuant to N.Y. Crim. Pro.

Law § 200.20.  (Tr. at 733).  Although Petitioner argues that the counts relating to a different

child should have been severed, the same evidence would have been presented, not just from Mr.

---

731-732).  Thus, it is unclear in what regard counsel's performance would be considered deficient "for allowing the Trial Court to Err."

Metzner who reported the abuse to CPS, including Petitioner's statements about both AR and M, but also from the police officers who questioned Petitioner. Petitioner's own statements regarding these children were intertwined and had the charges been severed, the case would essentially have to be tried twice. Indeed, the trial court explicitly found that severance "would create an undue burden upon the People to necessarily bring many of the same witnesses forward once again." (Tr. at 739). The fact that Petitioner was acquitted on the two charges relating to his conduct toward M demonstrates that the jury was nonetheless able to consider and evaluate the allegations on their own merits.

Petitioner has failed to demonstrate any error on the part of the State court, much less one that rises to the level of a constitutional violation. In the absence of any showing of any error on the part of the court that had a "'substantial and injurious effect or influence in determining the jury's verdict,'" *habeas* relief may not be granted. Accordingly, the Court respectfully recommends that petitioner's Implied Claim of trial court error in connection with the severance motion be dismissed as patently frivolous. There has been no showing that the Appellate Division's determination was contrary to or an unreasonable application of clearly established Federal law.

E. <u>Fifth Implied Claim - Trial Court Error in Jury Charge</u>

Petitioner argues that the trial court erred "by charging the jury regarding circumstantial evidence," stating that during the charge conference, his counsel "objected to a circumstantial evidence charge." (Pet'r Mem. at 19).

Here, the Appellate Division found that petitioner's claims of trial court error with respect to the jury charge were procedurally barred because Petitioner did not preserve them for appellate review. The state court explicitly stated that petitioner's "remaining contentions are

unpreserved for appellate review and, in any event, are without merit." People v. Dayton, 66 A.D.3d at 798, 887 N.Y.S.2d at 186.  A review of the trial transcript shows that Petitioner did not object to the charge as ultimately given at the time and thus a challenge to the charge is procedurally barred from habeas review.

A federal court may not review the *habeas* claims of a defendant whose claim was rejected in state court for failure to comply with a state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. at 750; see also Petronio v. Walsh, 736 F. Supp. 2d 640, 652 (E.D.N.Y. 2010) (citing Coleman v. Thompson, 501 U.S. at 729-30; Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999)).  If the state court decision contains a plain statement that a claim is procedurally barred, then the federal habeas court may not review the claim even if the state court also rejected the claim on the merits in the alternative.  See Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989); Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996) (holding that if a state court says that a claim is "not preserved for appellate review" and then rule[s] "in any event" on the merits, such claim is not preserved).  Thus, even if a petitioner raises a colorable federal claim, *habeas* review is barred if the claim was rejected in the state court on a procedural ground that is both "'independent' of the merits of the federal claim" and provides an "'adequate' basis for the court's decision." Fernandez v. Smith, 558 F. Supp. 2d 480, 489 (S.D.N.Y. 2008) (quoting Coleman v. Thompson, 501 U.S. at 729).

Here, although the state court relied on a procedural default in rejecting Petitioner's claim relating to the circumstantial evidence charge given to the jury, it clear that even if the court were to review the claim on the merits, the claim would fail.  As noted, Petitioner's claim, as set forth

in his Memorandum, is that the trial court erred "by charging the jury regarding circumstantial evidence." (Pet'r Mem. at 19).[24]  However, a review of the trial transcript demonstrates that the trial court did <u>not</u> give a circumstantial evidence charge to the jury.  (Tr. at 853-922).  Thus, it is unclear what Petitioner is objecting to and if his claim is based on a misunderstanding of the charge as given, it is without merit.

Even if Petitioner intended to claim error because the trial court failed to give a circumstantial evidence charge, this claim would also be without merit.  Under New York law, when a case depends exclusively on circumstantial evidence, "[a] defendant's request for a circumstantial evidence instruction must be allowed," but when a case involves direct evidence, it "does not qualify for the circumstantial evidence instruction."  <u>People v. Roldan</u>, 88 N.Y.2d 826, 827, 666 N.E.2d 553, 554, 643 N.Y.S.2d 960, 961 (1996).  Such an instruction would state that "the facts from which the inference of the defendant's guilt is drawn must be established with certainty [–] they must be inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis."  <u>People v. Barnes</u>, 50 N.Y.2d 375, 379-80, 406 N.E.2d 1071, 1073, 429 N.Y.S.2d 178, 180 (1980).  Where a case involves both circumstantial and direct evidence, New York law does not require that the trial court give a circumstantial evidence charge.  <u>People v. Ruiz</u>, 52 N.Y.2d 929, 930, 419 N.E.2d 343, 343, 437 N.Y.S.2d 665, 665-66 (1981).

In this case, the trial court's decision not to give a circumstantial evidence charge was entirely proper, because the case rested both on circumstantial evidence and the direct evidence

---

[24]Petitioner clearly misunderstands the import of the circumstantial evidence charge and a review of the transcript of the charge conference indicates that his attorney actually objected to such a charge.  (Tr. at 784-86).  The court initially proposed to offer a modified circumstantial evidence charge to the jury, but counsel objected to any circumstantial evidence charge being given.  (<u>Id.</u>)  Having prevailed in this objection, counsel did not object to the charge as a whole.  (<u>Id.</u> at 909).  Thus, to the extent that Petitioner is arguing that counsel was ineffective in failing to object to the charge, the record demonstrates otherwise.  (<u>See</u> discussion infra).

given by numerous eyewitnesses to Petitioner's conduct as well as Petitioner's own confession.
See People v. Ruiz, 52 N.Y.2d at 930, 419 N.E.2d at 343, 437 N.Y.S.2d at 665-66; People v.
Barnes, 50 N.Y.2d at 379-80, 406 N.E.2d at 1073, 429 N.Y.S.2d at 180; see also Floyd v. Miller,
No. 01 CV 2097, 2003 WL 21845995, at *7 (E.D.N.Y. Aug. 6, 2003).  Accordingly, Petitioner
was not entitled to a circumstantial evidence instruction as a matter of New York law.

Moreover, "[i]n order to obtain a writ of habeas corpus on the ground of error in the state
court's instructions to the jury on matters of state law, the petitioner must show not only that the
instruction misstated state law but also that the error violated a right guaranteed to him by federal
law."  Casillas v. Scully, 769 F.2d 60, 63 (2d Cir. 1985).  There is no constitutional right to a
jury charge on circumstantial evidence.  Martinez v. Reynolds, 888 F. Supp. 459, 464–65
(E.D.N.Y. May 30, 1995); see also Parisi v. Artus, No. 08 CV 1785, 2010 WL 4961746, at *4
(E.D.N.Y. Dec. 1, 2010).  Thus, Petitioner's Implied Claim that the trial court erred in giving a
circumstantial evidence charge to the jury is patently frivolous because no such charge was
given.  Accordingly the Court respectfully recommends dismissal of the claim.

F. Sixth Implied Claim - Ineffective Assistance of Counsel Relating to Jury Charge

Petitioner's *habeas* brief contains two possible factual bases for the Implied Claim that he
received ineffective assistance of counsel with respect to the jury charge: first, that counsel was
ineffective in failing to object to the reasonable doubt charge; and second, that counsel was
ineffective in failing to object to the circumstantial evidence charge.  Although these two claims
were not exhausted in the appellate review process, as explained supra, they are both patently
frivolous and the Court respectfully recommends that they be denied.

It is settled law that assistance of counsel is not ineffective under Strickland where a trial
court's instruction is legally correct and counsel fails to request an additional instruction.  See

<u>Aparicio v. Artuz</u>, 269 F.3d 78, 99 (2d Cir. 2001); <u>United States v. Brooks</u>, 82 F.3d 50, 54 (2d Cir. 1996) (counsel not deficient for failing to object to "proper" jury charge); <u>United States v. DiPaolo</u>, 804 F.2d 225, 234 (2d Cir. 1986) (no ineffective assistance where attorney failed to make an objection that "appears without merit").

 With respect to the reasonable doubt charge, Judge Platt found the trial court's reasonable doubt charge was not contrary to law and therefore counsel cannot be deemed ineffective for failing to object to that portion of the charge.

 Although Judge Platt did not address the argument made by Petitioner relating to the trial court's circumstantial evidence charge or the decision not to give such a charge, it is clear that this claim is also patently frivolous, as explained <u>supra</u>.  Given the nature of the evidence in the case, the trial court's decision not to give a circumstantial evidence charge was correct under New York law, and his counsel's alleged failure to object does not constitute ineffective assistance of counsel.[25]

 Having reviewed the jury charge as a whole and given that the underlying charge was proper, it is respectfully recommended that the court deny Petitioner's claim of error relating to counsel's failure to object to the jury charge as patently frivolous, and find that the Appellate Division's determination was neither contrary to, nor an unreasonable application of, clearly established Federal law.

<u>CONCLUSION</u>

 Having considered all of Petitioner's arguments and found them to be without merit, the Court respectfully recommends that the petition be denied in its entirety.  The Court further

---

[25] As noted, <u>supra</u> n. 21, trial counsel actually addressed this charge during the charge conference. (Tr. at 784-86).

recommends that the district court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), as Petitioner has not "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See, e.g.</u>, <u>Caidor v. Onondaga Cty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk of the Court is respectfully directed to mail a copy of this Report and Recommendation to Petitioner.

**SO ORDERED.**

Dated:  July 29, 2021
      Brooklyn, New York

                        /s/ Cheryl L. Pollak
                        Cheryl L. Pollak
                        Chief United States Magistrate Judge
                        Eastern District of New York